CITY OF JACKSON *v.* WALTER LAIRD ET AL.

[55 South. 41.]

DEDICATION. *Acceptance. Municipalities.*

> Where the owner made a survey of his land, laying it off into blocks, lots, streets and avenues and later sold the blocks and lots with reference to such streets and avenues, and afterwards the corporate limits of the city were extended so as to include said land, and the city assessed the blocks and lots of this addition for taxation, but not the streets and avenues, and the city worked a portion of the streets shown on such addition but not the particular street upon which the accident occurred. *Held,* that these facts constitute a dedication to and an acceptance by the city of the dedication to public use of the streets and avenues of such addition and renders the city liable for damages occasioned by its failure to keep up and repair such streets and avenues.

APPEAL from the circuit court of Hinds county.

HON. W. A. HENRY, Judge.

Suit by Walter Laid et al. against the city of Jackson. From a judgment for plaintiff the defendant appeals.

The facts are as follows:

This is an action by the appellees against the city of Jackson for damages for the death of a small negro boy, who fell into an open cistern and was drowned. The cistern in question is located on what is known as Convent avenue, being a street of the city of Jackson in what is known as "Split Addition." The land embraced in Split Addition was owned by one Griffith, who platted the property in 1888 and dedicated certain streets to the public use. Since this date the property which has been sold in this addition was conveyed by lots and blocks with due regard to streets. In 1904 the city limits were extended so as to take Split Addition into the corporate limits. For a long time Convent avenue was unused; but

it seems from the record that since 1907 it has been unobstructed and used to a limited extent by the traveling public, its boundaries being marked by a fence. It seems, also, that prior to the time the city limits were extended the county board of supervisors had the plat of this addition recorded. There was no order on the minutes of the board accepting the dedication of the streets out in this addition.

It is the contention of the city that there had been no acceptance of the dedication of the streets of Split Addition by the city. No order appears on the minutes of the municipal board. The appellee contends that when the city limits were extended, so as to take in Split Addition, this was an acceptance of the highway dedicated to the county and accepted by the county; it being contended by appellee that the act of the board of supervisors in ordering the record made of Split Addition amounted to an acceptance of the dedication. It is also shown by the record that the taxes paid on the property in Split Addition were by lots, and that no tax was ever required on the streets and avenues of said addition. Appellees contend that the action of the city in not requiring taxes amounts to the acceptance of the dedication, and that it is not necessary by ordinance to accept such dedication.

From a judgment for three thousand dollars the city appeals.

*Robert Powell,* for appellant.

In this case there was a dedication, so far as the original owners of the land were concerned, of what is now called Convent avenue, but in order to make the city liable for the failure to properly care for the street, something more than a dedication by the owners is required.

In the case of *Harrison County* v. *Seals,* 66 Miss. 129, this court says:

"Where the owner dedicates land for public use. as a road or street, in order to constitute it such a highway as the public is under obligation to keep in repair, there must be an acceptance of the dedication by the constituted authorities. The acceptance may be by formal adoption, or by repairing, or probably by long public use with the assent of the authorities."

In the case of *Kennedy* v. *Cumberland* (Md.), 7th Cent. Rep. 409, the court says:

"The fact that an individual lays out a street through his land and dedicates it to the public use, does not impose upon the county or municipality the duty of improving or keeping it in repair. There must be an acceptance of the dedication before this duty can arise."

"Again dedication without acceptance does not make a public street." *People of New York* v. *Leohfelm* (Anens), 2nd Cent. Reports 875.

"Land dedicated for a highway does not *ipso facto* become a highway and will not become one until the proper municipal authority has accepted it. *Boardem* v. *North Hudson County R. R. Co.*, 39 N. J. Eq., p. 465.

"A dedication may be complete as against the proprietor without any formal acceptance on the part of the public but in order to charge the municipal or local district with the duty to repair or to make it liable for inquiries for suffering a street or highway to be or remain defective there must be an acceptance of the dedication, which acceptance must be by the proper or authorized public authorities. It may be made at any time during the continuance of the gift and before the tender is withdrawn. Am. & Eng. Ency. of Law, Old Series, vol. 5, pp. 413 and 414, and authorities there cited.

In "Roads & Streets" by Elliott, 2nd Ed., sec. 150, the author says:

"In order to make a dedication complete on the part of the public as well as the owner, and to charge the public corporation having jurisdiction over highways

with the duty of repairing the way, there must be an acceptance of the dedication by the public or the proper local authorities. The owner may, as a rule, recall his dedication at any time before it has been accepted. Until there has been an accetance, the public cannot be charged with the duty of repairing, nor is there any liability for injuries caused by an unauthorized person, or by an officer not possessing authority over the highway, will not bind the public. See also numerous authorities cited under this section.

In this case the only acceptance attempted to be shown by the city is that the assesor of the city, without any order from the board of aldermen, copied from the records of the maps in the chancery clerk's office, and under this authority the assessor could not bind the city by such action. It is true that an acceptance on the part of the city may be implied, but we submit that under the facts in this case that the city has done nothing showing an intention to accept Convent avenue as a street and from the testimony the city had no knowledge that such a street existed.

In the second place by a comparison of the two maps shown in the evidence, one showing Convent avenue thirty feet wide and the other showing Convent avenue forty feet wide. It is impossible to say that the cistern into which the boy fell was included within the boundary of the supposed street at all.

We further contend that as the child was shown to be very sensible, and had been especially warned in regard to the cistern into which he fell, it should have been a question for the jury to have decided upon his mental capacity under the pleading and it was for the jury to say whether he was guilty of contributory negligence or not. And in such case a peremptory instruction should not have been given for the plaintiff.

In Beach on Contributory Negligence, sec. 117, the author announces the rule as follows:

"Unless the child is exceedingly young, it is usually left to the jury to determine the measure of care required of the particular child and the actual circumstances of the case and this doctrine is approved in *Howell* v. *R. R. Co.,* 75 Miss. 242."

We submit that as the cistern was in an open place, the boy a very reasonable child, the locality adjoining the boy's residence, the knowledge of the boy of the surroundings and the fact that he had been warned by his father, all these circumstances make such a case as that the jury should have been permitted to pass on the contributory negligence of the child.

We further contend that under the facts in this case the peremptory instruction asked by the city should have been granted.

*Harris & Potter,* for appellee.

In the year 1904 the corporate limits of the city of Jackson were extended so as to take in and include Split Addition, and the same since that time has been a part of the city of Jackson. Prior to that time, in 1896, the board of supervisors of Hinds county evidently desiring to fix the county's rights in suburban dedications of easements, directed the county surveyor to make copies of the plats where land had been dedicated and to record the same in the surveyor's record book of Hinds county. Under this order of the board of supervisors, the county surveyor made copies of such plats, including that of Split Addition and recorded the same in the surveyor's record book of the county. It was admitted to be a fact on the trial that no order to this effect was entered upon the minutes of the board.

"If no record of an order of acceptance of a dedication is made and the foundation for this is laid, parol evidence is competent." Elliott on Roads & Streets, 2nd Ed., sec. 151.

The record shows an order made by the board of supervisors paying the county surveyor the sum of fifty dollars for making copies of these plots. One of our contentions is that this deliberate act on the part of the board of supervisors is a more striking acceptance than would be an acceptance by a map ordered generally, and made by a surveyor of a county or town and adopted by the board. We also contend that the city of Jackson, by the extension of its corporate limits, so as to take in Split Addition, was an acceptance of the highway involved, by the city of Jackson.

"When an amended charter is accepted which adds to the municipal corporation, territory previously laid off and plotted, there is an implied acceptance of the streets and alleys designated in the plot." Elliott on Roads & Streets, 2nd Ed., p. 162.

The record shows that the city of Jackson has appropriated Blair and the other streets dedicated by Mr. Griffith, worked and made them into public streets.

In the case of *Dallas* v. *Gibbs,* 27 Texas Civ. App. 275, the court after citing *Town Council* v. *Lithgal,* 7 Richardson's Law 435, which held that digging a public well on the dedicator's way was an acceptance, that court held:

"If digging a well on the dedicator's land is an acceptance of the land for street purposes, much more so would it be acceptance when two-thirds or perhaps more of the land is at once opened up as a street. This act evinced an acceptance of the whole street as conveyed in the dedication and if there had been no other circumstances, it was sufficient to establish acceptance upon the part of the city."

"It is not essential for the city to show that the entire strip of land referred to in the plot had been used as a street, but it was essential that the whole had been dedicated as such." 6 Pet. 498 (U. S.).

In *Heitz* v. *St. Louis*, 110 Mo. 618, where the question was as to the dedication and acceptance of Kosciusko street, it appearing that there had been a plot filed and lots sold by plot of which Kosciusko street was a part, and the city had not accepted the dedication except by opening and maintaining Dorcas street of said subdivision, the court held:

"The city, by accepting, building and using Dorcas street as plotted must be regarded as an acceptance by the city of the whole tract plotted, and not as a bare acceptance of such portion of plotted district as the city chose to improve and did improve."

"The laying out of streets by a proprietor over his land, and selling of lots with reference thereto, is assimilated to a contract.

The proprietor engages to give the ground for the streets, according to his plat, upon the condition that the public shall accept or ratify it. Such acts are irrevocable; it is too late after they are done to assume absolute control over the property thus devoted to the public use. Nor is it necessary in order to manifest a ratification or acceptance of the dedication that the municipal authorities should presently open the streets; that may be postponed until the advancing population and private improvements make it necessary." *Briel* v. *Natchez,* 48 Miss. 423.

"Acceptance is evidenced either by the action of some civil authority representing the public, or by a purchase of lots by private persons, based upon the dedication, or by some use of the property by the public which implies an acceptance and estops the grantor." *Stanford,* 52 Miss. 383.

"When people build on the side of and with reference to a public street, they acquire an easement in its free uses by them and the public and in the resultant value of such user. This is property and cannot be taken from them or damaged by closing the street, except upon

compensation first paid. . . . All the citizens of a town have the right to have their public thoroughfares, streets, or alleys, whether acquired by dedication or use, kept open for their own use and the use of the visiting strangers who come for commerce or social intercourse." *Laurel* v. *Rowell,* 84 Miss. 435.

"The streets of an incorporated town are held by the corporation in trust for the public." *Vicksburg* v. *Marshall,* 59 Miss. 571; Dillon Mun. Corp., sec. 675.

"An implied acceptance of an offer to dedicate may be shown by refraining from the levying of taxes upon the land in question." Abbott on Corporation, p. 176.

"It was competent to show that the supervisor had refused to assess the land." *Grandville* v. *Gemison,* 84 Mich. 54.

"The public used it more or less as necessity and convenience required; that it had the same use as other public alleys in the neighborhood; that the city plotted the strip as a public alley and that no taxes were assessed against it after the year 1887. These facts are sufficient to show an acceptance by the city." *Keokuk* v. *Hardgrove,* 116 Iowa 189.

"The defense of want of funds is really blended with another which is more prominently set forth, and is that the city was not bound to open and put in repair the street on which plaintiff was walking when injured. It was not needed for the use of the public generally and if graded would have been used by only one or two families. It is true we think a city is not called upon to open new streets in advance of public needs, and even when a street has been accepted—recognized as a public way, a different and less degree of care may suffice for one infrequently used, than for those in the heart of the town. But it does not follow because a way is used a little that the city may permit pitfalls and dangerous precipices to be made and continued in it." *Whitfield* v. *Meridian,* 66 Miss. 570.

The court will see that the .evidence shows that in the neighborhood of the cistern were many families and children, and that about one hundred children went to the Catholic school. On the question of allowing a trap or pitfall to exist on premises: *Lipnic* v. *Gaddis,* 72 Miss. 200; *Whitfield* v. *Meridian,* 66 Miss. 570; *Osage City* v. *Larkin,* 2 L. R. A. 56.

The court will see that the acceptance is established, as we contended, by the action of the board of supervisors, in having the plat of Split Addition copied and recorded in the surveyor's record book, by the voluntary act of the city in extending her corporate limits so as to bring in Split Addition, by working, grading and adopting various of the streets dedicated, and by the exemption from assessment or taxation, of the land covering the dedicated way for many years, by the purchase of lots in such subdivision, relying upon the dedication and conduct of the city and by entering upon and use of the dedicated way by the public.

Counsel is mistaken in stating that the width of Covent avenue had been changed; it has always remained the same. We are sure there can be nothing in the contention that the question of contributory negligence should have been submitted to the jury.

"A child eight years old is *prima facie* incapable of contributory negligence." *Vicksburg* v. *McLean,* 67 Miss. 4; *Westbrook* v. *Ry. Co.,* 66 Miss. 560.

Here the child was only five years and three months and it is not shown to have been of exceptional capacity.

There are no disputed facts and the case presented only a question of law and the instruction for appellee, we believe to have been properly granted.

Argued orally by *W. H. Potter,* for appellee.

ANDERSON, J., delivered the opinion of the court.

The only question in this case about which there can be any doubt is whether the dedication by Griffith to

public use of the streets and avenues of "Split Addition" had been accepted by the city of Jackson at the time of the injury complained of.  In 1888 Griffith made a survey and map of his land, laying it off into blocks, lots, streets, and avenues, and later sold the blocks and lots with reference to such streets and avenues.  In 1904 the corporate limits of the city were extended so as to include "Split Addition."  Since that time the city has assessed the blocks and lots of this addition for taxation, but not the streets and avenues.  Convent avenue, where the injury occurred, has not been graded nor worked by the city, but has been used to a limited extent by the public.  Other streets and avenues of "Split Addition" have been worked and kept in repair by the municipal authorities and used by the public.  These facts constitute an acceptance by the city of the dedication of "Split Addition," including those streets and avenues which have not been graded and kept in repair. *Light Co.* v. *Montgomery,* 85 Miss. 304, 37 South. 958.; *Heitz* v. *St. Louis,* 110 Mo. 618, 19 S. W. 735; Elliott on Roads and Streets (2d Ed.), 162; *Carter* v. *Portland,* 4 Or. 339; 2 Abbott's Municipal Corporations, 1769; *Keokuk* v. *Cosgrove,* 116 Iowa, 189, 89 N. W. 983.

*Affirmed.*