GWIN *et al. v.* CITY OF GREENWOOD.[*]

(En Banc. Feb. 20, 1928. Suggestion of Error Overruled April 2, 1928.)

[115 So. 890. No. 26768.]

· *Corpus Juris-Cyc. References: Dedication, 18CJ, p. 69, n. 30; p. 112, n. 47; Eminent Domain, 20CJ, p. 593, n. 37; Municipal Corporations, 43CJ, p. 116, n. 90; On right of dedicator to prescribe use, control and status of property dedicated, see 8 R. C. L. 909; 2 R. C. L. Supp. 686; 4 R. C. L. Supp. 580; 6 R. C. L. Supp. 531.

*Chapman, Moody & Johnson, S. L. Gwin* and *S. Rosenthal,* for appellants.

*R. C. McBee, Alfred Stoner* and *A. H. Bell,* for appellee.

Argued orally by *C. C. Moody,* for appellants, and *Alfred Stoner* and *R. C. McBee,* for appellee.

ETHRIDGE, J.   This is an appeal from a decree of the chancery court of Leflore county enjoining the appellants from interfering with the use of certain streets by the city of Greenwood for street purposes, including the extension of the water mains and the water works system of the city of Greenwood, and canceling certain reservations shown on map filed by the owners of certain lands laid off as subdivisions known as Boulevard addition to North Greenwood.   The city of Greenwood, prior to December 5, 1922, was located on the south bank of the Yazoo river.   On that date an ordinance was adopted by the city authorities extending the city limits so as to include a territory lying on the north side of the river, including said Boulevard addition.

On March 10, 1910, W. T. Loggins, S. L. Gwin, and E. E. McShane were the owners of the lands now known as Boulevard addition, which lands were then platted and subdivided according to the statute providing therefor, and a map filed in the office of the chancery clerk showing this subdivision, and a copy thereof was filed with the bill of complaint.   On the face of the map appears the following:

"A continuous strip of land twenty-four feet in width along the center of Grand boulevard and Park avenue embracing all parkways and the land lying between the lines thereof, extended at street intersections, is reserved the entire length by the said E. R. McShane, W. T. Loggins, and S. L. Gwin, herein designated as the owners, for shade trees and ornamental purposes, for car tracks, water, sewer, and gas mains and pipes, telephone and electric light poles and wires, and such other utilities, public or private, as the said owners may at any time deem proper.   Wherever practicable, the overhead improvements, including telephone, telegraph, and electric light lines, shall be constructed through the alleys, and, where it may be necessary to construct the same through the boulevard, avenues, or streets, the right is reserved

in the said owners to select and determine the location in such boulevard, avenues, and streets of the poles used therefor. The exclusive right to construct, maintain, and operate water, sewerage, electric light, gas, and street car lines and systems in all of the alleys, streets, avenues, and boulevard is reserved in the said owners.''

It was alleged in the bill of complaint that the reservations above mentioned are inconsistent with the rights of the said city in the control and use, repair, and improvement of said boulevard, avenues, streets, and alleys, and inconsistent with the use of said boulevard, streets, avenues, and alleys, as such, and that said alleged reservations attempt to take the jurisdiction and control of said city over its boulevard, avenues, streets, and alleys, as vested by law, and are absolutely void and of no effect so far as the complainant is concerned, and that they cast a cloud upon complainant's title to said boulevard, avenues, alleys, and streets now embraced in said city. It was further alleged that, in order to supply the inhabitants with water for drinking, sanitary purposes, and fire protection, and in order to make other improvements, it is necessary that the water mains of the city, the said city owning and operating an electric light and water plant, be laid under and along the said boulevard, streets, avenues, and alleys in said addition, and that said S. L. Gwin and A. M. Hobbs now claim that the said city has no right to make such extensions of their mains and other improvements, on account of said attempted reservations, and that the said Gwin and Hobbs now hinder the said city in the free use and control of said boulevard, etc., and that said attempted reservations now cast a cloud on the title of said city in said boulevard, etc., and amount to a nuisance, etc. The bill prayed for an injunction restraining the defendants from interfering with the free use of said streets, boulevard, avenues, and alleys by said city for public purposes; that the said alleged reservations, as shown on the face of the map of

said addition above referred to, be declared void and of no effect, and be canceled as far as the free use of said boulevard, streets, avenues, and alleys by said city for public use, including the extension of said water mains, is concerned, and that all of said reservations be declared to be obstructions amounting to a public nuisance, and as such be abated, and then prays for general relief.

The bill also set out the ordinances adopted by the city of Greenwood extending its limits, and the proceedings in connection therewith.

The defendants filed an answer challenging the right of the city to take over the avenues, boulevard, streets, and alleys without paying the owners thereof the value of the property reserved. It also challenged the legality of the ordinances extending the limits of the city for various reasons. It further set forth that it had developed a system of waterworks and sewerage, and other utilities, at great expense; that it had bored artesian wells to supply the inhabitants of said addition with water, and had gone to great expense and established valuable property under said reservations. They made their answer a cross-bill, and demanded damages for the unlawful taking of their property.

There are various allegations challenging the legality of the ordinances, but we find it unnecessary to discuss the legality of the ordinances extending the city limits, as set forth in the pleadings and proof, and shall only consider the question as to whether the city, in extending its limits, included Boulevard addition, without the right to the free use of the streets through same for the purposes set forth in the bill, or whether they acquired same *cum onere,* burdened with the rights reserved in the original map and deeds made in laying off said addition and selling the property abutting on said streets. It appears from the record that Boulevard addition was not within the municipal limits of Greenwood or any municipality, when the addition was laid off and the contracts

made, and the utilities established and maintained by the defendants were erected and put into operation. A large number of homes had been erected in said addition on said streets and alleys and avenues, and said streets, avenues, and alleys were the means of ingress and egress for the owners of these homes. The Yazoo river, between the original city of Greenwood and this addition is crossed by means of a bridge. A street runs along that river on the opposite side, and the boulevard intersects that street, and leads due north to the Tallahatchie river, a mile or more away, and leads into one of the main highways of Leflore county. The travel from Greenwood uses this route in reaching the northern part of the county; thence on to Charleston and Memphis. The lots that face the boulevard have a frontage of one hundred feet and run back two hundred feet. There are, approximately, fifty of these lots, besides a much larger number of lots located on side streets and alleys. Originally, this Boulevard addition was a plantation, and the ground was cut up with deep sloughs, which had been filled up to a large extent by the parties establishing said addition.

It will be seen from this statement that, at the time Boulevard addition, was established it was rural territory, not lying within the limits of any municipality; and, in this opinion, we are not called upon to decide what effect the reservation made by the original owners in laying off said addition would have amounted to, had said addition been within the corporate limits of an existing municipality. We deal here with the situation of a rural development, wherein the land was platted and laid off into lots, and these lots sold to persons with reservations contained in their deeds, as above set out.

In 9 Amer. & Enc. Encyc. Law (2 Ed.), p. 75, it is stated, under the head of Partial and Limited Dedications—May Annex conditions, that:

"While it is presumed, in the absence of proof to the contrary, that the public is to have the unlimited and un-

restricted use of the land dedicated, for all public purposes consistent with the objects of the dedication, yet there may be a dedication in which the grantor reserves certain rights and privileges for himself, and, when such a dedication is accepted, the public takes it subject to burdens and conditions.''

In 8 R. C. L., p. 909, section 34, under the head of Rights of Dedicator or Proprietor, it is stated that:

''The dedicator may prescribe the terms, restrictions, and limitations on which the land is given; and, where the dedication does not operate to divest the owner of his title, he may use the land in any way not inconsistent with the enjoyment of the public rights therein, and is entitled to all the profits thereof not necessarily incident and appurtenant to the public user. In such case he has full dominion and control over the land subject to the easement in the public, and may bring an action for trespass against any person who infringes on the ordinary proprietary rights of the owner of the soil, in a manner not in the use of the easement, and subject to the same restrictions, may also maintain ejectment for the land. But he has no right to exercise his ownership in such a way as to defeat the uses for which the dedication was made.''

In 18 C. J., p. 69, section 62, it is stated:

''In dedicating land to the public, the dedicator may impose such reasonable conditions, restrictions and limitations as he may see fit, provided they are not inconsistent with the dedication, and will not defeat its operation, and while the public may refuse to accept what is thus offered, yet in order to vest the easement in the dedicatee, the terms of the dedication must be strictly complied with. The acceptance of a dedication in violation of the conditions of the grant is a nullity, if objection is seasonably made. Nevertheless, the dedicator may waive any conditions, restrictions or limitations imposed by him, and if he does so he cannot afterward com-

plain, especially if the acceptor of the dedication has spent money and labor upon it in fitting it for its purpose. If he desires to avoid his gift for noncompliance with the conditions or nonobservance of the restrictions imposed by him, he must move promptly.''

''In applying the general rule that the dedicator may impose reasonable conditions and restrictions in making a dedication of his property, it is, of course, competent for him to limit the use of his property to a specified use or purpose. He may dedicate his land subject to private easements of access, light and air, which easements are not antagonistic to the public use; he may make his dedication conditional on the making and maintenance of improvements on the property dedicated; he may reserve a right of way for a railroad track over the property dedicated, and when such portion has been thus devoted, the use will be suspended so long as that part is used for railroad purposes; he may reserve the right to control the location of any railroad over the property dedicated, and demand reasonable compensation therefor; he may reserve all private rights in land under water originally appurtenant to the estate, or the right to plow up and interfere temporarily with the use of a highway; he may prescribe the width and extent of the highway, or reserve to himself a strip of land between two streets, and the use made by him of the land so reserved at the time of the dedication will not deprive him or his assigns of the right to apply it afterward to other uses,'' etc.

It appears to us that in laying out a subdivision of land in a rural section into streets, lots, avenues, and alleys, no right is vested either in the public or those who buy such lands, contrary to the reservation made in the dedication. It is highly desirable, if not necessary, in such cases, to have such utilities as water, light, sewerage, telephones, and telegraph facilities, and we see no objection to the owner of the land, in laying same off in such addition, reserving to himself the sole right to con-

trol such utilities. This right, of course, is subject to the power of eminent domain, and the land may be condemned for public purposes under section 17 of the state Constitution. In other words, it is permissible for the owner to dedicate streets or highways, and in dedicating same to limit the use of the public, or the landowners buying lots, to use only the surface of such streets for the purpose of ingress and egress.

In the present case, there seems to have been a contract by which the owners of the land, when the addition was laid off, agreed to furnish water, light, and sewerage to the inhabitants. This was, of course, a benefit to them. There is nothing in the form of this contract prohibiting the owners from sinking wells upon their own property for their own use, artesian or otherwise. They were denied the privilege of furnishing such water to other landowners, or using the streets, and the plat within the streets reserved, for such purpose. In other words, there is nothing in the contract which would prevent any landowner from procuring water for his own use and his own land; and, this territory having an abundant water supply, the procurement of water for domestic purposes is seldom a serious problem. It can usually be had by the simple expedient of boring or digging a well; and we fail to see how any monopoly is established by such reservation, so long as each owner can procure water for his own use upon his own land. We do not mean to say that it is not permissible for the owners to use facilities furnished by the original owners, even though it might result in one party of the grantors, or their assigns, having the absolute right to furnish water. In such case, it would be subject to the lawmaking power of the state, or, when brought into a municipality, by such municipality. Of course, there might be cases where water companies have been granted exclusive rights to furnish water to a municipality, at rates therefor which have been fixed by contract, and these have been generally upheld as valid. In the very nature of things, a water com-

pany, or light company, can only exercise as a going concern when it has practically the exclusive right so to do, although such exclusive right may not be vested by law or by contract. See *Vicksburg* v. *Vicksburg Waterworks,* 202 U. S. 453, 26 S. Ct. 660, 50 L. Ed. 1102, 6 Ann. Cas. 253; *Vicksburg Waterworks Co.* v. *Vicksburg,* 185 U. S. 65, 22 S. Ct. 585, 46 L. Ed. 808; *Walla Walla* v. *Walla Walla Waterworks,* 172 U. S. 1, 19 S. Ct. 77, 43 L. Ed. 341; *Knoxville Waterworks* v. *Knoxville,* 200 U. S. 22, 26 S. Ct. 224, 50 L. Ed. 353; *New Orleans Gas Light Co.* v. *Louisiana L. & H. P. & Mfg. Co.,* 115 U. S. 650, 6 S. Ct. 252, 29 L. Ed. 516.

As we understand it, there has been no effort made to question the reasonableness of the rates charged for the utilities erected by the grantors. These grantors have gone to considerable expense, and have established a business which can be destroyed, if the contentions of the city should be upheld, by the simple expedient of the city laying its own pipes, and furnishing water at a cheaper rate than the appellants would be able to do, having a more circumscribed territory and less abundant facilities. It is the policy of our Constitution to protect property, and, while the city may condemn the rights the appellants have, and acquire the exclusive use of said streets, it must do so by eminent domain proceedings, or by contract, paying whatever the property is reasonably worth, as fixed either by contract, or in the condemnation proceedings.

The court therefore erred in granting the relief prayed for in the bill and enjoining the appellants from interfering with the city's use of said streets and cancelling said reservations of the appellants.

The judgment is therefore reversed and remanded, and the case remanded for relief on the cross-bill for damages done, and the original bill will be dismissed, and complainants remitted to the right of condemnation or purchase.

*Reversed and remanded.*