GWIN *v.* SMITH, SHERIFF, *et al.*

(Division A.   April 13, 1936.)

[167 So. 62.   No. 31990.]

Means Johnston, of Greenwood, for appellant.

444

**W. H. Montjoy, R. C. McBee** and **A. H. Bell,** all of Greenwood, for appellees.

McGowen, J., delivered the opinion of the court.

Mrs. M. W. Stroud and Mrs. Belle K. Weiler levied separate executions at law, as creditors of S. L. Gwin, upon the reservation retained by the owner in a map of Boulevard addition to North Greenwood. The property levied on was advertised for sale under separate executions; separate bills for injunction were filed by Gwin against the sheriff and the creditors named, in which it

was alleged that the reservation levied on and about to be sold was real property, and that under the condition set forth in the bill he was entitled to avail himself of the benefit of what is generally known as the "moratorium statute," chapter 247, Laws of 1934. Separate answers were filed on behalf of the creditors, in which it was denied that there was any defect in the execution; that Gwin was unable to refinance the judgment; and that he was entitled to any relief under the moratorium statute. The answers were made cross-bills and alleged that certain of the property advertised for sale, by virtue of the executions, was personal property, and that the sale thereof was not subject to injunction under the provisions of chapter 247, Laws of 1934.

By their cross-bills the creditors contended that the following described property was subject to levy and sale under execution as personal property, and was not real property within the meaning of the moratorium statute:

"1. The right to erect and maintain car tracks, water mains and pipes, sewer lines and pipes, gas mains and pipes; telephone poles and wires; electric light poles and wires on or under that certain continuous strip of land twenty-four feet in width along the center of Grand Boulevard embracing all Parkways and the land lying between the lands thereof extended at street and avenue intersections for the entire width thereof from the Northern boundary line of Claiborne Street to the North Boundary line of Park Avenue.

"2. That certain exclusive right to construct, maintain and operate water, sewerage, electric light, gas and street car lines and systems in all of the alleys, streets, avenues and boulevard as is reserved and shown by Map Book 2 page 19 of the Record of Maps of Leflore County, Miss."

The two suits were tried as one in the court below and are submitted here as only one case. The facts necessary

to understand the case are about as follows: In 1910, Gwin, Loggins, and McShane filed their map of Boulevard addition to North Greenwood in Leflore county, on which was the following reservation by the owners:

"A continuous strip of land twenty-four (24) feet in width along the center of Grand Boulevard and Park Avenue embracing all parkways and the land lying between the lines thereof, extended at street intersections, is reserved the entire length by me the said E. R. McShane, W. T. Loggins and S. L. Gwin, herein designated as the owners, for shade trees and ornamental purposes, for car tracks, water, sewer and gas mains and pipes, telephone and electric light poles and wires and such other utilities, public or private, as the said owners may at any time deem proper.

"Wherever practical, the overhead improvements, including telephone, telegraph and electric light lines, shall be constructed through alleys and where it is—may be necessary to construct the same through the boulevard, avenues, or streets, the right is reserved in the said owners to select and determine the location in such Boulevard, avenues and streets of the poles used therefor. The exclusive right to construct, maintain and operate water, sewerage, electric light, gas and street car lines and systems in all of the alleys, streets, avenues and boulevard is reserved in said owners."

This Boulevard addition was not incorporated and was composed of farm lands which were divided into lots, streets, and alleys, and lots were sold therefrom. Gwin is now conceded to be the owner of the entire reservation. The court below held that the property rights described in the cross-bills, and set forth above, were personal property and not subject to the provisions of chapter 247, Laws of 1934, and modified the injunction theretofore granted to the extent of releasing the said personal property from the injunction, and held as to all other property described in the execution that the injunction should

be perpetual until the expiration of said moratorium statute.

The brief of appellees states that: "There is only one issue involved in this case and that is whether or not the property rights are personal property or real property. If the said property rights are personal property, then the chancellor was correct in modifying the injunction. If, on the other hand, the property rights are real property, then the chancellor erred and the appellant is entitled to receive the benefit of the 'moratorium statute.' " Appellant's main contention is that the property released from the injunction, as described in the cross-bills, was real property, and therefore he was entitled to all the benefits of the moratorium statute.

Appellees' contention that the property released from the effect of the injunction was personal property is based upon the following stated reasons: "1. It was the appellant's intention to set aside his property rights as a separate class of property, and his intention once demonstrated is controlling. 2. The property rights involved, while not franchises, are such property rights to which the general public is vitally interested, and if abused, could be made into franchises by the state. 3. The Supreme Court of the state of Mississippi has decided in two cases, that similar and identical rights to these owned by the appellant are personal property."

The entire reservation as originally made on the map by the owners can only be viewed as a reservation of the real property therein described for all the purposes therein set forth, some of which are of a public nature and some of which are not. Had there been no reservation in the dedication and acceptance of the dedication—that is, the map—by the public, then most, if not all, of the rights reserved would have passed to the public as a part of the easement so dedicated and accepted. But the only intention of the dedicators was to retain to themselves the exclusive right to use the lands described to construct,

maintain, and operate the various utilities described therein, so that there is nothing in the contention that this reservation or limitation on the grant to the public of streets, alleys, parks, and parkways was intended by the owners to change the status of the property—they continued to own as they had in the past.

It is insisted by appellees that this reservation, which the court below has held is subject to be levied upon by execution as on personal property, is like unto a franchise, because the right therein asserted might in some manner become a franchise. Counsel for appellees having thus determined that it is like a franchise, and that, therefore, a franchise granting the same privileges which were retained by the owners here would be personal property for the purpose of taxation, rely upon the cases of Adams, Revenue Agent, v. Bullock & Co. et al., 94 Miss. 27, 47 So. 527, 19 Ann. Cas. 165, and Teche Lines v. Board of Supervisors of Forrest County, 165 Miss. 594, 142 So. 24, 143 So. 486. In the Bullock case the city of Vicksburg granted an exclusive franchise to Bullock, which afterwards became the property of the Vicksburg Waterworks Company, to erect, maintain, and operate a system of waterworks in the corporate limits in the city of Vicksburg. The court held that this franchise right to operate was personal property for the purpose of taxation. The thing that was held to be subject to taxation was the grant from the sovereign of the right to do the particular thing. There was never any contention that the waterworks company had any right of any kind in real property, insofar as taxation in that case was concerned; it was a grant of an exclusive right to do the particular thing for a term of years.

Gwin's rights here are in no sense akin to a franchise. His rights are derived from his fee-simple title to the land to which the sovereign had no claim.

The Teche Lines case was one in which it was held that a certificate of convenience and necessity granted

by the railroad commission—an arm of the sovereign—to a bus line to operate over a certain highway was personal property for the same reasons as controlled in the Bullock case. The Teche Lines, though granted a franchise or certificate, had no kind of claim to the land over which it passed. The thing that was taxed was the grant from the sovereign—the franchise.

In our opinion there is no merit in the contention that the rule applied to franchises by many courts for the purpose of taxation should be applied to the owner of the fee who has never parted with his title thereto, and who publicly asserts, in effect, by his reservation in his dedication that he will retain those rights along with all others not granted in the dedication. There is absolutely no difficulty in reaching the conclusion that the property carved out by the creditors in the court below was a part of the real property owned by Gwin, and the only thing that causes hesitation in this court is the assertion of counsel, for whom we entertain great respect. As a matter of fact, this court has held that all the property embraced in the injunction, as it now stands and originally included therein, was real property. Gwin v. City of Greenwood, 150 Miss. 656, 115 So. 890, 58 A. L. R. 849, and City of Greenwood v. Gwin, 153 Miss. 517, 121 So. 160.

Gwin and his associates were the owners in fee simple of all the lands when they filed this map, and by the reservation they limited the easement granted to the public by the general dedication, and that is all the dedication means. There is no statute in this state requiring that the title shall pass with the dedication of an easement. Sections 7149 to 7151, inclusive, Code of 1930, the same being sections 4964 to 4966, inclusive, Code of 1906. After this dedication by the filing of the map for record with a written reservation thereon, Gwin and his associates continued to own the fee in all the lands dedicated therein as an easement for the public and as an inducement for the sale of the lots. See Rowzee v. Pierce, 75

Miss. 846, 23 So. 307, 40 L. R. A. 402, 65 Am. St. Rep. 625, and Briel v. City of Natchez, 48 Miss. 423; 8 R. C. L., p. 906, sec. 32. "The dedicator may prescribe the terms, restrictions, and limitations on which the land is given; and where the dedication does not operate to divest the owner of his title he may use the land in any way not inconsistent with the enjoyment of the public rights therein, and is entitled to all the profits thereof not necessarily incident and appurtenant to the public user. In such case he has full dominion and control over the land, subject to the easement in the public, and may bring an action for trespass against any person who infringes on the ordinary proprietary rights of the owner of the soil, in a manner not in the use of the easement, and, subject to the same restrictions, may also maintain ejectment for the land. But he has no right to exercise his ownership in such a way as to defeat the uses for which the dedication was made." Section 34, p. 909.

If Gwin retained the fee, he retained all the incidents thereto that were not granted to the public in the dedication, and he cannot be divested of it by the assertion that he breathed into his right a life which created a different property or estate. Suppose he was a planter and had said that in these parks he would reserve the right to plant cotton and corn, on the idea of beautification (and that would not be far-fetched in the Delta, for to the Delta farmer the flowering cotton and the tasseling corn would be a most beautiful picture), would anybody say that he had thereby created a different property right from that which inhered in him by virtue of his fee-simple title to the land, the soil, and all the incidents thereof? We hardly think so. It was land, real property, before the dedication was made; it continued to be land after the dedication was made, and so far as the rule invoked here by counsel for appellees is concerned, this right cannot become personal property unless and until the sovereign shall, by some means known to the law,

453

acquire the right to grant it to some other party or corporation.

There are numerous intangible rights vested in the owner by virtue of his fee-simple title to land, all of which are a part of the real property so long as the owner retains them or until he is legally divested thereof. It is difficult to conceive that the mere assertion of the owner of the land that he retains a certain intangible right thereasto which he had before would change the character of the property so that real property would become personal property. A public or private claim of a property right by an owner thereof could not bring about the mutation here claimed. So long as the property remained in the hands of its owner, all of its former attributes and uses were his unchanged. We are not dealing here with property dedicated, but, on the contrary, with property undedicated.

We are therefore of the opinion that the chancellor erred in releasing from the injunction the property described, on the theory that it was personal property. We reverse the decree of the court below and reinstate that injunction without modification.

Reversed and remanded.