STEGALL, et al. d.b.a. WOODBINE WATER COMPANY *v.*
CITY OF JACKSON, MISSISSIPPI, et al.

No. 42320          May 14, 1962          141 So. 2d 236

July 10, 1962                              143 So. 2d 298

*Ricketts & Young,* Jackson, for appellants.

*E. W. Stennett, Watkins & Eager,* Jackson, for appellees.

McGehee, C. J.

In 1956, the appellants, Troy Stegall and his Son, Shelby D. Stegall, were the owners of certain parcels or tracts of land situated to the south and west of the corporate limits of the City of Jackson. They desired to sell lots and build houses in this area as the same were developed for residential purposes. In this area the FHA would not approve loans where septic tanks were used because the soil would not pass the percolation test required by the Federal Housing Administration and the State Board of Health.

During that year the Stegalls began the gradual construction of a system of sewer lines in the area, and additions thereto were built in 1957, 1958, 1959 and 1960. By the year 1960, the system consisted of 17.23 miles of sewer lines, 7.11 miles of six-inch surface lines, 345 manholes, 1,109 wyes, and one two-hundred gallon pumping station which served a small portion of the area. These sewer lines were laid under county roads and under streets of platted and recorded subdivisions; and in private rights-of-way and easements which had been purchased and were owned by the Stegalls.

When the corporate limits of the City of Jackson were extended in 1960, the appellants, Troy and Shelby D. Stegall, d. b. a. Woodbine Water Company, were operating the system of sewer lines running through various subdivisions located outside of the southern and southwest part of the City of Jackson below the Terry and Raymond highways.

When the city limits were thus extended in 1960, the Mayor and Commissioners of the City of Jackson caused the City Attorney, the Hon. E. W. Stennett, to notify the appellant, Troy Stegall, that the City was taking over the sewer system which the Stegalls had "installed in what is now the southwest part of the City", since the City of Jackson was given by statute

the full jurisdiction and control over streets and sewers within the City, and that thereafter the City alone would be authorized to make additions and connections to the system. The letter advised the Stegalls that the City would proceed to make connections to the system, and notified the Stegalls to refrain from making any additional connections. The letter also requested a conference with the Stegalls for working out the details involved in connection with the operation and maintenance of the said sewer system.

Thereupon, the appellants filed this suit in the Chancery Court of the First Judicial District of Hinds County, Mississippi, for an injunction to restrain the City from interfering with the operation and maintenance of the sewer system by the complainants; and asking that the said chancery court determine the amount of compensation that the complainants were entitled to receive for their said sewer system. The City of Jackson, acting through its Mayor and Commissioners, filed an answer and cross bill asking the court to adjudicate what amount, if any, the City should pay to the complainants for the value of such system, and the City asked for an injunction against the appellants to restrain them from interfering with the full jurisdiction vested by the statute in the City of Jackson, following the extension of the city limits, since the City then had the right to maintain and operate the said sewer system, but in its answer and cross bill the City denied that it was taking private property for public use within the meaning of Section 17 of the State Constitution of 1890, and denied its liability to pay any amount to the complainants as the value of the said sewer system, upon the theory that when the sewer lines were laid in the county roads and streets without authority, they were thereby dedicated to the public use and became public property, and also for the reason that the Stegalls had collected from the lot owners "tap-on" fees, of

from $250 to $450 per residence, depending upon where the residence was located, and had also collected $1.25 per month for each residence as a maintenance fee for the sewer system, and that thereby the Stegalls had received the sum of $69,589.10 more than the cost to them of the sewer system from the said lot owners and were not entitled to collect the cost thereof for the second time, but the City asks that if mistaken in this, the court should determine what amount, if any, the City should pay to the Stegalls for the said sewer system.

After a full hearing in the matter, the chancellor rendered a decree in favor of the Stegalls, holding in effect that the City was not liable to the Stegalls for the value of the sewer system, but that the City was liable to them for the sum of $101,500, which was to be paid and was paid into the registry of the court, as a condition precedent to the City's right to take over and operate the said sewer system, — this $101,500 representing (1) an allowance of $30,000 to the Stegalls for the rights-of-way and easements which they had acquired by purchase from the property owners, and had paid for, and which were owned by them at the time the City took over the operation and maintenance of the sewer system; (2) the sum of $44,000 representing the cost of a by-pass line outside the corporate limits as extended, the construction of which by the Stegalls was necessitated by the City's taking; and (3) the sum of $27,500 representing the amount of the loss of profits on the sewer system that would be sustained by the Stegalls at the rate of $5,500 per year for a period of five years in maintenance fees of the system at the rate of $1.25 per month for each residence during such period of time.

As to the right of the Stegalls to require the City of Jackson to pay to them the value of the sewer system in question, this issue is discussed and developed under the following point in the City's brief to-wit: ''Where

a privately built and operated utility system has been completely paid for by tap-on fees . . . by adjoining landowners who thereby and therefor acquired perpetual right of the use thereof or an equitable ownership of the system, a city, upon annexation of the area, is not required to pay for the system from taxes collected by it from property owners in the city."

In the case of Trentman v. City and County of Denver, Colorado, 129 F. Supp. 624, 236 F. 2d 951, 1 L. Ed. 2d 239, the city annexed areas where there was already in existence a privately built and operated water system. In some instances it had been advertised that water would be available; and, in consummating sales the plaintiffs used contracts which provided that the purchasers should pay $25 for each 25-foot lot for the installation of water mains. In other subdivisions there were no actual contributions by adjoining owners, but the availability of water was publicized; and, its presence was reflected in a higher sales price for the lots. After the annexation, the city took over the furnishing of water directly to the owners using the water system. Suit was brought against the city for damages for the conversion of the system. The District Court, in holding that there could be no recovery, stated: "Plaintiffs possess no such interest in either of the two instant water systems to support an action for conversion inasmuch as the beneficial interest in such systems was either sold to the property owners in the various additions when they purchased the lots; or, such systems must be deemed dedicated to the public use in the areas in question."

The Court of Appeals, in affirming this decision, used the following language: "Instead of providing new or different water facilities for such consumers, the city and county took over and used the pipes, connections, fittings, and other like facilities of the systems already installed. The water systems were installed for the

purpose of making the lots within the subdivisions saleable and usable for residential purposes. Their intended purpose from the outset was to serve the purchasers of lots, the consumers of water, and the public. And prior to the annexation of the territory to the City and County of Denver, the Public Utilities Commission of Colorado issued conventional certificates of convenience and necessity for their operation. The acts and conduct of plaintiffs, considered as a whole, constituted a dedication in law of the systems to the use and benefit of the owners of lots, the consumers of water, and the public. And under the express finding of the court, at the time of the annexation plaintiffs had been completely reimbursed for their investment in the systems. Under such finding, plaintiffs did not then have any un-repaid investment in the property. The water systems having been dedicated to a public purpose, plaintiffs having been completely reimbursed for their investment in such systems, the territory within which the subdivisions were located having been validly annexed to the city and county, and the city and county being under the duty to protect the public health, welfare, and the safety of the inhabitants of the annexed area, the action of the city and county in taking charge and control of such systems for use in furthering the public purpose to which they were dedicated did not constitute the wrongful taking or appropriation of property of plaintiffs which rendered the city and county liable in damages for conversion. Ford Realty & Construction Co. v. City of Cleveland, 30 Ohio App. 1, 164 N. E. 62; Suburban Real Estate Co. v. Incorporated Village of Silverton, 31 Ohio App. 452, 167 N. E. 474; City of Danville v. Forest Hills Development Corp., 165 Va. 425, 182 S. E. 548; Royal Oak Township v. City of Ferndale, 309 Mich. 458, 15 N. W. 2d 707; South Memphis Land Co. v. City of Memphis, 18 Tenn. App. 142, 74 S. W.

2d 209; Spaugh v. City of Winston-Salem, 234 N. C. 708, 68 S. E. 2d 838.''

See also Royal Oak Township v. City of Ferndale, 15 N. W. 2d 707 (Mich. 1944); Country Club District Service Company v. Village of Edina, 8 N. W. 2d 321 (Minn. 1943); Norfolk County v. City of Portsmouth, 98 S. E. 755 (Va. 1919); City of Lansing v. Township of Lansing, 97 N. W. 2d 804 (Mich. 1959). Cf. Derby Heights, Inc. v. Gantt Water & Sewer District, 116 S. E. 2d 13 (S. C. 1960), wherein the court pointed out that no representations were made to, or agreements had with, the public. See also Styers v. City of Gastonia, N. C. (N. C. 1960). Whereas, in the instant case, the Stegalls had placed ninety percent of its sewer system in public streets and had executed a conveyance in trust to the Deposit Guaranty Bank & Trust Company at Jackson, Mississippi, containing the following recitation: ''It is the intention and purpose of the Grantors that such sewerage system shall be used and operated to provide adequate disposal of sewerage for each of the properties connected thereto, regardless of the owner-ship of the individual properties . . . and to assure the continuance of the operation and maintenance of such sewerage system for the benefit of the present and future owners of the properties connected hereto . . . This grant is for the benefit of the present and future owners of all and each of the properties now or hereafter connected to the said sewerage system . . .''

Of course it necessarily follows that when an area in which a sewer system has been installed is taken by annexation, the city must acquire full jurisdiction over the streets and sewer system because otherwise the city could not perform its duty to keep the sewer system or streets in repair, since excavation would be necessary in either event. In the instant case we think that when the Stegalls laid their pipelines in the streets and county roads without authority from anyone having jurisdic-

180

tion to grant permission to do so, they thereby dedicated the same to a public use, and that they cannot now collect from the City of Jackson the value thereof, and especially in view of the fact that the lot owners by the payment of tap-on and maintenance fees have reimbursed the Stegalls far in excess of what the sewer system cost them. The testimony of W. E. Mallett, the civil engineer employed by the City, and introduced as a witness on behalf of the plaintiff, and the testimony of A. N. Morgan, a CPA who testified for the City, was to the effect that the Stegalls had been reimbursed for all of their expenditures in connection with the installation of the sewer system in excess of more than $69,000. In other words, the taxpayers of the area served by the system actually paid therefor a sum in excess of $69,000 more than it cost, and have thereby acquired the beneficial or equitable ownership of the same.

■■ ■ Where water or sewer lines are placed in the streets and become an integral part thereof, the private builder of such lines is not entitled to compensation therefor by a municipality which has expanded its city limits and taken over the system in the public streets. City of St. Paul v. St. Paul City Railway Company, 249 Minn. 357, 82 N. W. 2d 369; City of Shawnee, Oklahoma v. Thompson, 275 P. 2d 323 (Okla.); Haven Homes v. Raritan Township, 19 N. J. 239, 116 A. 2d 25; Cornwall v. Garrison, 59 Idaho 287, 81 P. 2d 1094; Cheltenham & Abington Sewerage Company v. Public Service Commission, 107 Pa. Superior 225, 162 A. 469.

In the instant case, plats of all of the areas involved in the Stegall system were duly approved, filed and recorded. None of such plats contained any reservation of any kind. Contrasted with that is Gwin v. City of Greenwood, 150 Miss. 656, 115 So. 890, where the plat of the subdivision, later taken into the city, contained an express reservation of the exclusive right to construct, maintain and operate water and sewerage systems

in the streets of the subdivision. Lots in the subdivisions were sold in most instances with reference to the plats. There were two other clear evidences of dedication by appellants. One was the agreements by appellants with subdivision owners, in which it was recited that they were in consideration of the mutual benefits to be derived by the contracting parties and all present and future owners of any lots in a particular subdivision. The other conclusive evidence of dedication arose from the stated declaration of trust executed by the Stegalls in 1956, declaring a bank to be the trustee for the benefit of adjoining property owners, that the sewerage system shall be used and operated to provide adequate disposal of sewerage for the properties, regardless of ownership of the individual properties, and that it was to assure continuance of the operation and maintenance of such system "for the benefit of the present and future owners of all and each of the properties now or hereafter connected to the said sewerage system." See Harrison County v. Seal, 66 Miss. 129, 5 So. 622; City v. Laird, 99 Miss. 476, 55 So. 41; Miss. Code 1942, Rec., Secs. 3374-112, 3374-116, 3374-128, 3374-129, 3374-120.

In short, we hold that the overwhelming weight of the evidence reflects that the appellants dedicated to public use, without any reservations, that part of the sewer system laid in roads and streets; that therefore this part of the system was not private property protected by Miss. Constitution Sec. 17; and that the only part of the sewer system for which appellants were entitled to compensation was that located on private rights-of-way or easements, as the chancery court correctly held.

In addition to the great weight of authority elsewhere on the dedication issue, we think the Gwin cases (there were four of them) support this conclusion. In Gwin v. City of Greenwood, 150 Miss. 656, 115 So. 890 (1928), it was held that, where the owner of a subdivision

outside of the city limits dedicated the streets but reserved the exclusive right to operate water and sewer lines thereon, and later the city extended its boundaries to include this area, the city had no right to enjoin Gwin from interfering with its extension of water mains. The reservation in the dedication preserved in the dedicator a private right of property. However, on the second appeal, City of Greenwood v. Gwin, 153 Miss. 517, 121 So. 160 (1929), Gwin was denied a right of injunction which sought to prohibit the city from condemning a joint right with him to construct a water and sewer system in the streets of the newly acquired subdivision. See also Gwin v. City of Greenwood, 159 Miss. 110, 131 So. 821 (1931) (attorney's fees for dissolution of wrongfully issued injunction).

In the fourth Gwin case, Gwin v. Smith, Sheriff, 175 Miss. 442, 167 So. 62 (1936), after the city condemned the joint right, plaintiffs levied executions as creditors of Gwin upon his reserved rights in the streets of the subdivision. Gwin filed a bill to enjoin the executions, on the ground his rights were real property and protected by the moratorium statute. Defendants asserted they were personal property but the court held these rights were realty. After a summary of the earlier facts, it was said: ''Had there been no reservation in the dedication and acceptance of the dedication — that is, the map — by the public, then most, if not all, of the rights reserved would have passed to the public as a part of the easement so dedicated and accepted.''

In other words, without Gwin's reservation in the dedication, the water and sewer system would have become public property dedicated to a public use. Although not decision in that case, this statement is in accord with the majority rule outlined above, and supports our decision here, that Stegall unreservedly dedicated to the public those parts of the sewer system in the public roads and streets.

■■■ As to the item of $30,000 allowed by the decree as damages for the rights-of-way and easements which were not dedicated to the appellee by the placing of sewer pipes under the streets, or rather where the City took over the rights-of-way and easements which the Stegalls had acquired by purchase from the property owners and had paid for, and which they in fact owned outright at the time the City took over the operation and maintenance of the sewer system, we have concluded to affirm the decree as to this $30,000 allowance to the Stegalls.

■■■ The decree is therefore affirmed in part as to the allowance of this item of $30,000 damages. The decree is further affirmed as to the allowance to appellants of $44,000 damages, for the cost of construction by the Stegalls of a by-pass line, necessitated by the City's acquisition of that portion of the sewer system inside the present expanded city limits. By stipulation of the parties, and as adjudicated in the decree, the City has a joint right of user, with appellants, of the main Stegall outfall line for a defined period not to exceed three years.

■■■ We think that the item of $27,500 for the loss of anticipated profits for a period of five years should be, and the same is hereby, eliminated from the decree entirely. In summarizing the rule and in quoting from the case of Board of Levee Commissioners v. Hendricks, 77 Miss. 483, 27 So. 613, in the case of Miss. State Highway Commission v. Rogers, 236 Miss. 800, 112 So. 2d 250, this Court said: "The reason for excluding such testimony (as to future profits) is that the profits from a business are extremely uncertain, highly speculative, and depend on many contingencies aside from the use to which the land taken is being put. * * * Furthermore, neither the business nor its profits are acquired in eminent domain."

Affirmed in part; reversed in part; and judgment rendered here.

*Arrington, Ethridge, McElroy* and *Rodgers, JJ.,* concur.

## ON SUGGESTION OF ERROR

ARRINGTON, J.

Appellants filed a suggestion of error, and, on request by the Court, appellees filed a reply brief. **(Hn 6)** After consideration, we are of the opinion that we were in error in certain respects. In particular, it was originally held that the decree of the Chancery Court should be reversed and remanded to determine the amount of damages to be allowed for the "out-fall line," which the decree assessed at $44,000. In assessing such damages the chancellor's decree referred to "a by-pass out-fall line," combining the two descriptions thereof. The original briefs did not clarify the proper description of the constructed line as a by-pass line. In order for the Stegalls to connect up their out-fall line outside of the new city limits, it was necessary for them to construct a by-pass line. We think that the award of $44,000 for that latter item was proper and supported by the evidence, and the chancellor's decree to that effect is affirmed.

The cause was erroneously remanded to determine the value of a joint right of user of the out-fall line. In the trial court the parties expressly stipulated as to such joint user, and the decree so provided. In view of this stipulation, remand therefor was improper.

In order to conform these conclusions with our original opinion, we are directing certain modifications and changes on three pages of the opinion, and the reporter will be notified accordingly. The final disposition of this case is hereby changed in accordance with the above conclusions. The decree of the chancery court is affirmed

in part as to the allowance of $30,000 for the private easements owned by the Stegalls and taken by the City, and as to the award of $44,000 for the cost of construction of the by-pass line. As originally decided, the decree is reversed in part insofar as it awarded special damages of $27,500 for the loss of anticipated profits. Otherwise we adhere to the remainder of our original decision.

This cause is not remanded, but judgment is rendered here in accordance with these conclusions.

Suggestion of error overruled in part, and sustained in part; judgment modified and corrected.

*McGehee, C. J.,* and *Ethridge, McElroy* and *Rodgers, JJ.,* concur.