490 So.2d 887 (1986)
Louie W. MODLING, et al.
v.
BAILEY HOMES AND INSURANCE, et al.
No. 55526.
Supreme Court of Mississippi.
June 4, 1986.
Floyd J. Logan, Hopkins, Logan, Vaughn & Anderson, Gulfport, for appellants.
*888 Stanford E. Morse, Jr., White & Morse, Joseph R. Meadows, Graves, Riley, Meadows & Walker, Gulfport, for appellees.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
DAN M. LEE, Justice, for the Court:
On January 4, 1983, Mr. and Mrs. Louie Modling, and other property owners, filed a complaint in the Chancery Court of Harrison County, Mississippi for an injunction to set aside a conveyance of land from the City of Gulfport to Bailey Homes, Inc. Bailey Homes, in response to this complaint, later filed a petition to vacate the plat of the land in question. Motions for summary judgment were filed by both parties.
On February 2, 1984, the court rendered summary judgment in favor of Bailey Homes. The plat referring to the land in question was vacated. Modling and two others have appealed, and make these assignments of error:
1. The court erred in failing to grant summary judgment in favor of appellants in that there was no genuine issue of material fact that appellee Bailey's title to the subject is void for the following reasons: (a) the conveyance is an illegal attempt to convey city property dedicated to a public use, i.e., drainage purposes; and (b) the conveyance does not conform to mandatory requirements of the ordinances of the City of Gulfport and the laws of the State of Mississippi.
2. In the alternative, the court erred in granting summary judgment in favor of the appellees in that there exists a genuine issue of material fact whether the conveyance to appellee Bailey by the city is void for the foregoing reasons.
The land which is the subject of this lawsuit is part of what was originally known as Bayou View Subdivision in Gulfport, Mississippi. The plat for this subdivision was filed on May 28, 1954. This piece of land, which is adjacent to Brickyard Bayou, and is behind the homes on Poplar Circle, is marked "Reserved by City for Drainage Control."
In 1959, the City of Gulfport became desirous of acquiring land in another area for use as a park or recreational area. To that end, the city conveyed the piece of land ajoining Brickyard Bayou to Bailey Homes in exchange for another piece of land in another part of the city, for use as a park. A resolution approving that action was not entered into the minutes of the City of Gulfport until February 2, 1960, when a resolution was adopted approving the exchange, and that resolution was entered into the minutes. In 1980, another resolution was passed by the city concerning this property, and entered into the minute book. This resolution attempted to correct the city's inadvertent failure to retain a 50 foot easement on the land which was immediately adjacent to the Bayou. Additionally, the resolution contains the following language:
Whereas, the Mayor and Board of Commissioners further finds and does so determine that the property exchanged with Bailey Homes and Insurance of Gulfport, Inc. was and is surplus and the city has no further need for the land for drainage control with the exception of the easement as herein described.
At approximately the same time, Bailey Homes granted to the City of Gulfport a perpetual easement for drainage control over the property.
As stated earlier, the property in question extends from the back lot lines of the residences on Poplar Circle to the edge of Brickyard Bayou. The plaintiffs in this suit all live on Poplar Circle, as, apparently, so does Sherwood Bailey, who is a director and officer of Bailey Homes. It appears from the record that from the time of the conveyance to Bailey Homes in 1960 until about 1983, the property remained in an undeveloped state. Residents of the area used the property for hiking and picnicking, and other recreational uses. Additionally, Louie Modling, who had a boat dock on Brickyard Bayou, used the property for access to that dock. Two of the plaintiffs, *889 Ben Simmons and J.W. King, submitted affidavits stating that they purchased their property in reliance upon the reservation by the city of the property for flood control. Additionally, Simmons alleged that he designed his house so that it would face the undeveloped area.
On May 26, 1981, the city approved Bailey's plan to build a new subdivision on that property  which was to be called Brickyard Bayou Subdivision. The plaintiffs in this case, who were the adjoining property owners, objected to this new subdivision, on the grounds that it would violate the restrictive covenants which they felt applied to the entire area. In January, 1983, the plaintiffs filed the instant suit, asking the court to set aside the conveyance of land to Bailey Homes, and also to enjoin Bailey from developing the subdivision in question. As a basis for the suit, the plaintiffs alleged that the conveyance was void because proper approval was not obtained before the sale. Additionally, the plaintiffs attacked the proposed subdivision on the basis that there was no notice to the adjoining landowners, that the property was reserved for drainage purposes, that it depreciated the plaintiffs property values, that it constituted a flood hazard and a drainage problem, that it was a nuisance in construction and landscaping, and that, because of the subdivision, Modling would lose his easement to the boat slip.
Bailey answered by granting Modling an easement over its property to the boat dock. Subsequently, Bailey filed a petition to vacate the plat of the subdivision, granted Gulfport a 50 foot drainage easement along Brickyard Bayou for drainage purposes, and again granted Modling a dock easement. The City of Gulfport passed a resolution agreeing to the partial vacation of the plat, on July 19, 1983.
In April, 1983, Bailey began construction of the roads through its proposed subdivision. At about that time, heavy rains hit the area, and there was flooding. One of the plaintiffs, J.W. King, took pictures of the flooding, which he alleged was caused by the development of the area. Bailey submitted affidavits from Sherwood Bailey and two engineers which stated that the flooding was due to unprecedented rainfall, and would have occurred with or without the beginning of development. They further alleged that the proposed development included plans for drainage, and that any flooding would be due to unnaturally heavy rainfall, or flooding due to hurricanes.
Both of the parties moved for summary judgment. At a hearing on the motions, the court heard testimony from Milton Evans, who was the Mayor of Gulfport at the time of the original conveyance. Evans testified that he was primarily responsible for platting the subdivision. He stated that the reason for reserving part of the area for drainage was to be able to classify it later. He said that there were several areas that were marked "Reserved for Drainage," and that the intent of the city was not to dedicate the area to a public use, but to reserve it for later determination. He alleged that the city believed at the time that it was reserving an interest in the property, and would be able to sell it at a later date. The city reserved an area along the bayou because the bayou should be dredged often, and the reservation gave the city access to it, as well as a place to dump the sediment which it dredged up from the bayou. However, he also testified that no dredging had been done.
The chancery court granted summary judgment in favor of Bailey Homes. In its judgment, the court held that the property had not been dedicated to a public use, that Bailey Homes was the proper owner of the property, and that the plat of the subdivision should be vacated. The chancellor also held that Modling would retain his easement over the property to reach his boat dock, and held that the city would retain their permanent fifty foot easement over the property for drainage purposes. For the reasons that follow, we affirm the judgment of the chancellor.
As the court noted, the primary issue in this case is whether the conveyance to Bailey Homes from the City of Gulfport was valid. To determine that, the first *890 issue is whether the property was dedicated, or merely reserved. Applicants contend that the land was dedicated for public use, and it was beyond the power of the City of Gulfport to alienate it. The appellants argued that the clear intent of the City of Gulfport was to dedicate this property, and that the plat shows a clear and express dedication for public use. Furthermore, the appellants would argue that if the intent of the city was not clear from the plat, the ambiguity should be construed in favor of the public.
We cannot find from an examination of the plat that there was a clear, express dedication. On the contrary, there appears to be a clear, express reservation of the property which is inconsistent with any dedication. 23 Am.Jur.2d Dedication § 33 (1983) makes the following comment on the difference between the two words:
Even such an indefinite expression as "the place," or the word "reserved," may operate, in the light of circumstances under which it is used, to show a dedicatory intention. It has been stated as a general rule, however, that where a reservation of private land for a specified purpose is made on a map or plat, a reservation to the private use of the owner is implied rather than a dedication to the public.
26 C.J.S. Dedication § 22 (1956) makes the following comment:
Reservations of designated land marking a plat dedicating streets, alleys, public grounds, etc. to the public is not a dedication of such land to the public, but on the contrary clearly negatives an intent to dedicate it.
In this case, the word "reserved" was clearly marked on the plat. This would appear to negative any intent  implied or express  to dedicate the property to a public use. The facts are similar to those of Gwin v. City of Greenwood, 150 Miss. 656, 115 So. 890 (1928), and its later case, Gwin v. Smith, 175 Miss. 442, 167 So. 62 (1936). Both of those cases dealt with a plat, part of which was reserved for "Shade trees and ornamental purposes, for car tracks, water, sewer, and gas mains and pipes, telephone and electric light poles and wires, and such other utilities, public or private, as the said owners may at any time deem proper." 150 Miss. at 665, 115 So. at 890. In both those cases, the issue was whether the property was reserved so that the prior owners had retained an interest in it. In both cases, the Court held that it was. "No right is vested either in the public or those who buy such lands, contrary to the reservation made in the dedication." 150 Miss., at 670, 115 So. at 892. [emphasis added] "The entire reservation as originally made on the map by the owners can only be viewed as a reservation of the real property therein described for all the purposes therein set forth, some of which are of a public nature and some of which are not." 175 Miss. at 449, 167 So. at 64.
A similar question was presented to the Louisiana court in Jefferson Parish School Board v. Assets Realization Co., 182 So.2d 818 (La. 1966). In that case, the portion of land in dispute was marked on the map as "Reserved for Schools." The Court there held:
We cannot read into the words "Reserved for Schools" any other meaning or intent of the owners who subdivided the property. That they, or their successors in title, might have changed their minds and decided to make other disposition or use of the "reserved" tract does not give a right or cause of action to the parish school board.
182 So.2d at 821.
The next issue is whether the conveyance from the City of Gulfport to Bailey Homes was valid. We note here that the City of Gulfport is in the unusual position of being the owner of the property. As this Court held in Gwin v. Smith, once there has been a reservation the owners continue "to own as they had in the past." 175 Miss. at 450, 167 So. at 64. If the city continued to own the land that it had reserved for drainage, then it was within the power of the city to alienate that property. Miss. Code Ann. § 21-17-1 (1972) gave municipalities the authority to convey land. *891 However, Miss. Code Ann. § 21-15-17 (1972) states "All official actions of the governing authorities of a municipality shall be evidenced only by official entries duly recorded on such minute book."
This requirement is consistent with the law, as it existed at the time this property was conveyed, before Miss. Code Ann. § 21-17-1 (Supp. 1985) was amended to include the plethora of formalities which now must be entered on the minute book. The February 2, 1960 transaction, in which the property was actually conveyed to Bailey Homes, was recorded on the minute book of the City of Gulfport. The August, 1959 discussion was preliminary to the actual completion of the transaction and delivery of deeds in February, 1960.
Finally, there is the question of whether this case was appropriate for summary judgment. The parties virtually conceded in their briefs, and agreed at oral argument, that there was no dispute over the facts in this case. The chancellor apparently made his determination by examining the documents made a part of the record  the original plat of the subdivision, and the resolutions of the City of Gulfport. These documents could not be factually disputed by the parties. "Where the facts are undisputed and admit of but one legal interpretation or can lead to but one legal conclusion, the question of intention [to dedicate property] is one of law." 23 Am.Jur.2d Dedication § 23 (1983). Rule 56 of the Mississippi Rules of Civil Procedure allows for summary judgment where there is no genuine issue of material fact, and where the moving party is entitled to judgment as a matter of law. We agree with the finding of the chancellor that there was no genuine issue of material fact in this case, and that Bailey Homes was entitled to judgment as a matter of law.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and SULLIVAN, JJ., concur.