TOWNSHIP OF ROYAL OAK *v.* CITY OF FERNDALE.

1. JUDGMENT—PARTIES—MUNICIPAL     CORPORATIONS—ANNEXATION—
   WATER SYSTEM.

   In township's suit against home rule city to restrain latter from
   interfering with water system which had been supplying do-
   mestic and industrial users in territory of township annexed
   by city, the interests of holders of water-supply-system revenue
   bonds, issued after the annexation under township ordinance
   restricting them to system within unincorporated territory, are
   not adjudicated where bondholders are not parties nor directly
   represented except by an *amicus curiae* brief and portion of
   system within the annexed territory is but five per cent. of
   township's entire system and segregation of portion involved
   would not imperil bondholder's rights.

2. MUNICIPAL CORPORATIONS—TOWNSHIP WATER SUPPLY CONTRACT—
   ANNEXATION.

   Existence of provision in contract under which city in adjoining
   county supplied water for use in territory including some
   which had been annexed to defendant city from plaintiff town-
   ship that if such township territory so supplied with water
   should become annexed to first-mentioned city during the life
   of the contract that all water mains would become the property
   of such city *held,* immaterial in suit by township against de-
   fendant city to restrain latter from interfering with water
   system in territory which had been annexed to defendant over
   10 years before contract between plaintiff and other city was
   entered into.

3. SAME—TOWNSHIP WATER SUPPLY SYSTEM—INJUNCTION.

   A township's suit to enjoin defendant city from interfering
   with township water supply system, part of which lay within
   territory annexed to defendant from plaintiff, must be based
   upon all the material facts and circumstances applicable to
   the particular case.

4. Same—Nature of Right to Control Water System Installed by Property Owners—Annexation.

> The right of control of a municipality to water mains laid in its streets, paid for with money obtained from property owners to whom the service was to be rendered, is not that of an absolute beneficial owner but that of a trustee, subject to the beneficial interest of the property owners to be served, and is a control which may pass with the territory to the annexing municipality if it can operate the system in the annexed territory without impairment of the rights of the property owners served, even though the municipality from which the territory is taken may be permissively allowed to continue the service.

5. Same—Water System—Bonds—Statutes.

> The right of a municipality to encumber its water system by issuing revenue bonds is derived purely from statute (Act No. 94, Pub. Acts 1933, as amended by Act No. 66, Pub. Acts 1935).

6. Same—Water Mains—Annexation—Adjustment of Property Rights.

> The right of a municipality in water mains, installed at the expense of the property owners to be served, is not such a property right as should be considered in adjusting, under the applicable statutes, property rights of the respective municipalities incident to annexations (1 Comp. Laws 1929, § 2250, as amended by Act No. 233, Pub. Acts 1931).

7. Same—Annexation—Adjustment of Personal Property Rights —Statutes.

> A statute requiring the adjustment of rights of respective municipalities in personal property involved in annexation of territory is not applicable where annexation took place before the enactment of the statute (1 Comp. Laws 1929, § 2250, as amended by Act No. 233, Pub. Acts 1931).

8. Same—Annexation—Water Mains—Public Welfare.

> As a matter of public policy, in the absence of extraordinary circumstances requiring otherwise, the annexation of territory carries with it the right of the annexing municipality to take over water mains in the annexed territory that were installed at the expense of the property owners served thereby, in order that such municipality might protect the public health, welfare and safety of the inhabitants of the annexed territory where the annexing municipality can continue such service to the property owners beneficially interested therein.

9. Same—Annexation—Continuance of Water Service—Right to Control Mains.

> If an annexing municipality is unable to continue the service to property owners beneficially interested in the control and operation of water mains, the annexing municipality may not gain the right to their control and operation upon annexation.

10. Same—Annexation—Unified Water System—Bonds.

> In case territory annexed by a municipality is part of that served by a complete or unified water system, the value of which would be destroyed or greatly impaired by division, the annexing municipality would not necessarily gain control of the water mains by reason of the annexation and previously-issued bonds upon such a system would follow the territory severed from the jurisdiction of the borrower (Act No. 94, § 32, Pub. Acts 1933, as amended by Act No. 210, Pub. Acts 1941).

11. Same—Annexation—Water Mains—Pumping Station—General Taxation.

> The control of water mains serving territory severed from a municipality, which mains had been paid for by property owners serviced thereby but which municipality had an operating plant or pumping station erected from proceeds of general taxation or assessments levied over the municipality at large and whose value would be destroyed or greatly impaired by a division, would not necessarily pass to the annexing municipality.

12. Injunction — Municipal Corporations — Annexation — Interference with Water System.

> Impairments to operation of water system in balance of plaintiff township because of alteration by city of system within territory annexed to city from township held, insufficient to justify granting injunction against interference with city's operation of water mains within the annexed area, the interference not affecting the supply of water to the system from a source outside of the township.

13. Municipal Corporations—Annexation—Water Mains—Estoppel.

> City to which territory was annexed from adjoining township was not estopped from interfering with the use of water mains in the annexed territory and which constituted a part of the township water supply service by reason of the fact that city failed to assert ownership for a period of approximately 14 years nor because of letter written by defendant's

city manager, at most only an administrative officer, to a second city supplying the water, where neither matter has worked to the disadvantage of the township.

14. Estoppel—Disadvantage to One Raising Defense.

A fundamental requisite of estoppel is that conduct, whether action or inaction, on the part of the one against whom the estoppel is asserted has worked to the disadvantage of the party who urges this defense.

15. Appeal and Error—Remand on Reversal—Disposition of Sequestered Revenues.

In township's suit to enjoin city from interfering with water mains located within territory annexed to city from township where revenues had been collected during pendency of suit, upon reversal of decree for plaintiff, suit is remanded to jurisdiction of circuit court in chancery to make further orders relative to disposition of sequestered revenues.

Appeal from Oakland; Holland (H. Russel), J. Submitted June 7, 1944. (Docket No. 18, Calendar No. 42,735.) Decided September 11, 1944.

Bill by Township of Royal Oak against City of Ferndale to restrain interference with water supply system in territory annexed to defendant. Decree for plaintiff. Defendant appeals. Reversed and bill dismissed. Remanded for disposition of revenues collected.

*Glenn C. Gillespie, Carl A. Braun* and *Franklin E. Morris,* for plaintiff.

*Orph C. Holmes* (*Claude H. Stevens,* of counsel), for defendant.

*Miller, Canfield, Paddock & Stone, amici curiae.*

North, C. J. Plaintiff township of Royal Oak (hereinafter referred to as the township) and defendant city of Ferndale (hereinafter referred to as

the city) are located in Oakland county. The defendant is a home rule city which adopted its charter in April, 1927. By elections held in February and June, 1928, the city annexed territory adjacent to its easterly boundary which prior to annexation was a part of plaintiff township. This annexed territory extends about two miles north and south, and in the southerly half its width east and west is three blocks of platted territory theretofore laid out in the township, and the northerly half of the annexed territory is about two-thirds as wide. With the exception of limited portions all of this territory was platted prior to its annexation. And prior to annexation suitable installations had been made for supplying water to a substantial portion of this annexed territory. The cost of installation, so far as it is involved in this suit, had been met by the owners of the property which it served, either by the lot owners (or the subdividers) paying $75 per lot or by special assessments which have been fully paid. Prior to the 1928 annexations and for approximately 11 years thereafter the water supply was furnished in the township (including the annexed territory) by the city of Detroit which adjoins the township on the south, and the charges for such service were collected from users by the city of Detroit. In 1938 the township by proper ordinance procedure created and thereafter began to operate its own water system, continuing however to take the supply from Detroit under a contract executed in April, 1939. Upon taking over the water system the township proceeded to make additions thereto. In this connection it first issued $160,000 of water-supply-system revenue bonds; and later issued an additional $40,000 of such bonds. In October, 1939, both of these bond issues were refunded by an issue of $200,000 water-supply-system revenue refunding

bonds. However, none of the proceeds of these bond issues were expended in extension or improvement of the water system within the annexed territory. Just prior to the time this litigation arose, the system as operated by the township had approximately 6,200 users. Of the total 95 miles of mains operated by the township, approximately 5 per cent. is in the annexed territory. Since the annexation no extensions or improvements, except ordinary repairs, have been made by the township to the water system in the annexed territory; but after the township established its water system it read the meters and collected the water charges until July, 1942. Since the annexation, the city has made some repairs to the water system in the annexed territory and has installed 25 hydrants. More recently it has constructed additional water mains through which connection with the city's supply system (which also comes from Detroit) has been made with a portion of the water pipes in the annexed territory. By so doing the city enabled itself to adequately furnish through township pipes water for domestic use and also for certain industrial plants located within the annexed territory whose use of water was much larger than that of ordinary domestic users. After this condition as to the city's water system came about, a controversy arose between the city and the township as to which had the right to and which should furnish the water service to the consumers in a limited portion of the annexed territory which could thus be reached and served by either the township or the city; and of course the revenue to be derived therefrom was involved.

The township insisted that it had a vested right in the established water system of the township notwithstanding the service was being rendered in and

the revenue collected in the territory which years before had been annexed to the city. On the other hand the city, asserting that at times the township water supply had been inadequate to meet the needs of industrial plants located in the disputed territory or to furnish adequate fire protection, contended that upon annexation the right to control the streets in which the water mains were laid became vested in the city, and that therefore it had the right to take over the operation of the water system and the revenue incident thereto. With this situation existing, the city, in July, 1942, closed the gates or valves in certain township supply mains through which the township water system had been supplying the portion of the system in the annexed territory which is in dispute in this suit. Thereupon the city began supplying water in the disputed area. The township protested such action on the part of the city as being an invasion of its rights and shortly filed the bill of complaint herein. The relief sought is that the city be enjoined from interfering in any manner with the township in operating and maintaining its water supply system and from interfering with the township in collecting accounts for water furnished in the annexed territory as the township had done in prior years. The suit was heard on the merits and a decree entered granting plaintiff the relief sought. Defendant has appealed.

For reasons hereinafter noted, we are of the opinion that the instant case can be and should be adjudicated on the basis of the rights of plaintiff township and defendant city resulting from the annexation of township territory, and without present consideration or determination of rights of other parties which under other circumstances would necessitate their consideration and which might be controlling of decision. For example considerable

space in the briefs is devoted to the rights of bond-holders, the contention being made that a portion of the township water system cannot be segregated without unlawfully impairing the rights of bond-holders. But the interests of bondholders, except possibly indirectly through the township, are not represented in this suit. They are not parties and final adjudication of their rights is not possible in this suit; notwithstanding an *amicus curiae* brief has been filed concerning rights of bondholders. Moreover, none of the bonds were issued until years after annexation; and the ordinance creating the water system on which the revenue bonds were issued contains the following: "and it is hereby determined to take over, operate and maintain the water supply system now existing within the *unincorporated portion* of said township now operated by the board of water commissioners of the city of Detroit and to replace and extend certain existing water mains and appurtenances in said system, in accordance with the maps, plans and specifications caused to be prepared." Obviously the expression limiting the system to that within the "unincorporated portion" of the township was wholly without meaning unless it excluded the portion of the water system within territory which had been annexed to the city years before. Further, the undisputed record discloses that the appraised value of the township water system is in excess of $750,000, and that the system in 8 months in 1942 produced, after deduction of operating cost, an income sufficient to pay bond retirement of nearly $11,000 and a further net income before depreciation of $28,701.25. Hence it appears that the segregation of only 5 per cent. of the township's water system would not imperil the rights of bondholders.

Nor are we persuaded that the outcome of the

instant case is materially affected by the existence of the 1939 contract between the plaintiff township and Detroit under which water is supplied for the township system, notwithstanding the contract among other things provided that in event township territory supplied with water should be annexed to Detroit during the life of the contract, all water mains, et cetera, supplied with water in such annexed territory would become the property of Detroit.

Other features of this record might be noted which clearly indicate that litigation of this character may arise under such a variety of circumstances that no hard and fast rule can be laid down which will furnish a guide for decision in each case. Instead each controversy of this character must be adjudicated in the light of all the material facts and the law applicable to the particular case. But as above noted we failed to find in the instant record facts or circumstances which prevent decision being based upon the rights and duties of the plaintiff township and defendant city respectively.

It is important to consider the character of ownership or of right of control that the township had in the water mains in suit at the time of annexation, and the character of such ownership or right of control, if any, that passed to the defendant city as the result of the annexation. We have already stated that the portion of the township water system in the annexed area was paid for with money obtained from property owners to whom the service was to be rendered. Under such circumstances we do not think it can be said with accuracy that the water system when installed became the property of the township in the sense that it was the absolute beneficial owner of the same. Nor would such absolute ownership pass to another municipality

incident to subsequent annexation of the territory served. In so stating we are mindful of the right of a municipality to encumber its water system by issuing revenue bonds, but such right is derived purely from statutory provisions. Act No. 94, Pub. Acts 1933, as amended by Act No. 66, Pub. Acts 1935 (Comp. Laws Supp. 1935, § 2486–22 *et seq.,* Stat. Ann. § 5.2731 *et seq.*). The apparent result is that the right of the municipality in whose streets water mains are laid at the expense of property owners to be served is that of a trustee which possesses and controls the system thus established subject to the beneficial interest of the property owners to be served. And in the absence of rights and circumstances other than those appearing in the instant record, if the area in which such a water system is installed passes by annexation to another municipality so circumstanced that it can operate the water system in the annexed territory without impairment of the rights of the property owners served, then the right and the duty to render such service passes to the annexing municipality; although, as has occurred in the instant case, the municipality from which the territory is taken may be permissively allowed to continue the service.

Counsel are quite in accord as to the character of a municipality's property right under the circumstances of the instant case being of the limited nature above stated. In appellee's brief it is stated as follows:

"It seems too clear for argument, that the township does not own the water supply system, in the sense that it is township property to be used or disposed of as the township authorities see fit. The title of the township is in the nature of that of a trustee, holding title to the property and assets of the water supply system in trust for water users

and the inhabitants of the township, and, it operates the same in more or less of a private capacity under the authority of the statute, for the use and benefit of its citizens whose money was used for its purchase.''

Subsequent to the annexations there was an adjustment of property rights between the city and the township, but no claim of that character was presented relative to the existing water system in the annexed territory. Nor do we think that the rights of a municipality in a water system installed at the expense of the property owners to be served is such a property right, either real or personal, as should be considered in adjusting under the applicable statutes property rights of the respective municipalities incident to annexations. Counsel for the respective parties agree as to this phase of the law. See *County of Norfolk* v. *City of Portsmouth,* 124 Va. 639, 659 (98 S. E. 755, 762). In passing it may be noted that the Michigan statute requiring adjustment of the rights of respective municipalities in *personal* property is not applicable in any event to the instant case because it was enacted subsequent to the annexation. *City of Detroit* v. *Township of Redford,* 253 Mich. 453. For statutory provisions just referred to, see 1 Comp. Laws 1929, § 2250, as amended by Act No. 233, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 2250, Stat. Ann. § 5.2093). We also note that our decision in *Mitton* v. *Jewell,* 279 Mich. 9, is not in point in the instant case. The cited decision is urged as authority by the township in support of its contention that the water mains installed by subdividers in a public street are personal property, the ownership or control of which the township asserts did not pass to the city incident to annexation. But as we have indicated the instant controversy is between two municipalities, neither

of which under the circumstances of the instant case has the absolute beneficial ownership of the water mains; whereas in the cited case the controversy was between private litigants, one of whom was found to be the actual owner of the water main involved.

There are numerous reasons for holding that, in the absence of extraordinary circumstances necessitating a contrary holding, annexation carries with it the right of the annexing municipality to take over water service of the character here involved. For example, after annexation in the instant case it obviously became the duty of defendant city to protect the public health, welfare and safety of the inhabitants of the annexed territory. This at once placed the annexing municipality in the field of sanitation, including water supply and sewage disposal as well as responsibility for the streets in which such facilities are located. It follows as a matter of public policy that in the absence of other circumstances or rights not present in the instant case, the right of control of water mains laid in the streets of the annexed territory passed to the annexing municipality.

Notwithstanding, as noted above, the control and operation of water mains installed under the circumstances of this case is a matter of the execution of a trust imposed upon and accepted by the municipality, a different result than that above indicated might necessarily follow if the annexing municipality was unable to continue the service to the property owners who are beneficially interested therein. The same might be true if prior to annexation bondholders had become vested with rights in a complete or unified water system which rights would be impaired by severance of a part of the system. However, in such case there is an appli-

cable statutory provision which in part reads:
"The severance of any lands from the jurisdiction
of the borrower subsequent to the issuance of bonds
under this act, shall be subject to the obligations
created by the issuance of such bonds." Act No. 94,
§ 32, Pub. Acts 1933, as amended by Act No. 210,
Pub. Acts 1941 (Comp. Laws Supp. 1943, § 2486–53,
Stat. Ann. 1943 Cum. Supp. § 5.2762). Likewise,
decision in a case of this character might be con-
trolled by the fact that a municipality from the pro-
ceeds of general taxation or assessments levied over
the municipality at large had financed the construc-
tion of an operating plant, such as a pumping sta-
tion, the value of which would be destroyed or
greatly impaired by a division of the water system.

We are mindful plaintiff herein makes the con-
tention that the township had established a so-
called "unified" system and that the alteration in the
water system in the instant case will impair to some
extent the remaining portion of the township's
system and to some extent increase the relative cost
of operation. In this connection the township points
out that the change which the city would make will
create a limited number of "dead ends" in township
mains, will impair circulation of water and reduce
pressure. But it is important to note that the change
in control and operation which the city seeks to
bring about in no way interferes with the water
supply to the remaining portion of the township
from the Detroit water system. Under the facts of
this case, we are of the opinion that the matters
urged by plaintiff as impairments of the township's
water system and its reasonable operation are
rather inconsequential and not sufficient to justify
granting the relief sought by plaintiff.

We are not in accord with the township's conten-
tion that it should be granted the injunctive relief
sought on the ground that the defendant city is

estopped from taking over the water system in the annexed territory. The township urges estoppel, first, on the ground that following the 1928 annexations "the city of Ferndale made no claim of ownership of any part of the township water supply system" for a period of approximately 14 years during which the township was permitted to operate the portion of its water system located within the annexed area. And, secondly, the township urges estoppel by reason of the following. In November, 1938, when the township was contemplating making a new contract with the water department of Detroit, which contract was consummated in April, 1939, the city manager of Ferndale wrote to the Detroit board of water commissioners the following letter:

"Gentlemen: I understand that Royal Oak township is contemplating entering into a contract with your board whereby you will wholesale water to the township, and it will distribute the same through its own mains. Their distribution system will take in part of the east side of Ferndale. Due to our present lay-out of mains, it is impractical for us to take these small portions of our city into our system. It is agreeable to us that Royal Oak township supply those services in our section of the city that is now being served direct by the city of Detroit, provided rates are not increased."

Neither of the foregoing circumstances is of a character to justify holding that the defendant city is estopped from now taking over control of the portion of the water system in dispute. Under the facts disclosed in the instant case, nothing to the disadvantage of the township has resulted from its having been permitted to operate the water system previously constructed in the annexed territory and to collect the resulting revenues during the latter portion of the period intervening between the 1928 annexations and the time when the city decided to

take over a part of the system. Nor do we find anything in the above-quoted communication by the Ferndale city manager to the Detroit board of water commissioners (not addressed to the plaintiff township) which, without any present complaint on the part of the city of Detroit, would work an estoppel in favor of plaintiff. While not necessary to decision, it may well be doubted whether the communication from the Ferndale city manager, who under the Ferndale city charter was at most only an administrative officer, was binding upon or controlling of the rights of any of the parties concerned. *Droste* v. *City of Highland Park,* 258 Mich. 1. Concerning the above-noted letter the Ferndale city manager testified: "At that time it was satisfactory to the city of Ferndale for the township of Royal Oak to continue temporarily the operation of the system."

"A fundamental requisite of estoppel is that conduct, whether action or inaction, on the part of the one against whom the estoppel is asserted has worked to the disadvantage of the party who urges this defense." *Kaminski* v. *Wayne County Board of Auditors,* 287 Mich. 62, 66. See also, *Burnham* v. *Kelley,* 299 Mich. 452.

From the foregoing it follows that the decree entered in the circuit court must be reversed and one entered in this Court dismissing plaintiff's bill of complaint; continuing, however, jurisdiction in the circuit court in chancery to make such further orders as shall be deemed necessary relative to disposition of the revenues collected for water service pending this suit, which revenues were sequestered by order of the trial court pending litigation. Defendant will have costs of both courts.

Starr, Wiest, Butzel, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.