SOMERVILLE v. LANDEL METROPOLITAN DISTRICT.

1. MUNICIPAL CORPORATIONS—WATER UTILITIES OUTSIDE CORPORATE LIMITS.
    The right of a city to own and operate either within or without its corporate limits public utilities for the supplying, selling and delivering of water is limited by the Constitution in that the city must, among other things, obtain a franchise from the municipal authorities wherein the portion of the water system is located (Const 1908, art 8, §§ 23, 28).

2. DECLARATORY JUDGMENT—QUESTIONS REVIEWABLE—MUNICIPAL CORPORATIONS—CONSENT TO LAYING OF WATER MAINS—ANNEXATION OF TOWNSHIP TERRITORY.
    Question as to from whom consent should have been obtained for the laying of water mains in township territory as extension of a city's water system is not determined, where no permission had ever been obtained as to water mains in question in suit by water users for declaration of rights after annexation of territory in which they were located to city furnishing the water (Const 1908, art 8, §§ 23, 28; CL 1948, § 123.144).

3. SAME—DE NOVO HEARING ON APPEAL.
    An appeal from a declaratory judgment is heard *de novo* by the Supreme Court.

REFERENCES FOR POINTS IN HEADNOTES
[1, 4–6] 38 Am Jur, Municipal Corporations §§ 559, 570.
[2] 16 Am Jur, Declaratory Judgments § 76.
[4] 16 Am Jur, Declaratory Judgments § 57.
[8] 14 Am Jur, Costs § 91.

4. MUNICIPAL CORPORATIONS—WATER MAINS OUTSIDE CORPORATE
   LIMITS—CONTRACTS.

   The failure to obtain approval of any municipal authority for
   the laying of water mains outside the corporate limits of
   city of whose water system they were extensions rendered
   contracts between city and the parties to whom the water
   was supplied legal agreements which have been performed
   in an illegal manner (Const 1908, art 8, §§ 23, 28; CL 1948,
   § 123.144).

5. SAME — WATER USERS — THIRD-PARTY BENEFICIARY CONTRACTS —
   EQUITABLE ESTOPPEL.

   Plaintiffs who were water users through city water-main exten-
   sions originally laid in township territory under contracts
   with city, but without a franchise having been obtained
   therefor, and which territory was later annexed to the city have
   a beneficial interest in the water-main extensions and as third-
   party beneficiaries under their predecessors' contracts entitling
   them to relief of having water furnished by the city at rates
   not greater than as established by the contracts rather than
   having it supplied by metropolitan district which had succeeded
   to such rights as township may have had and which district
   was subject to equitable estoppel by reason of provisions of
   lease of the mains from city for a period before the annexa-
   tion took place (Const 1908, art 8, §§ 23, 28; CL 1948,
   § 123.144).

6. CONTRACTS — WATER USERS — IMPAIRMENT — METROPOLITAN
   DISTRICT BONDS — REVENUE.

   Rights of water users from extensions of city's mains which, when
   laid, were put into township territory later incorporated into
   metropolitan district that was engaged in furnishing water
   through such mains which it leased from city after issuing
   bonds, antedated rights of bondholders and were not subject
   to impairment by later contracts and lien of bondholders did
   not attach to revenue derived from such water users (Const
   1908, art 8, §§ 23, 28, 31; CL 1948, § 117.4f; § 119.1 *et seq.*;
   § 123.141 *et seq.*).

7. PARTIES—DECLARATORY JUDGMENT—REAL PARTY IN INTEREST—
   BONDS—REVENUES.

   Holder of metropolitan district bonds was a proper party to
   suit for declaration of rights, where it has a substantial
   interest in the outcome of litigation involving the right of
   the district to certain revenues used in retirement of the
   bonds (CL 1948, § 119.1 *et seq.*).

8. COSTS — PUBLIC QUESTION — DECLARATORY JUDGMENT — WATER
   USERS—MUNICIPAL CORPORATIONS—METROPOLITAN DISTRICT.
   No costs are allowed in suit for declaration of rights between
   plaintiff water users, city which furnished the water and metro-
   politan district in which the territory involved was located
   for a time prior to annexation to city, a public question being
   involved.

Appeal from Ingham; Salmon (Marvin J.), J.
Submitted June 16, 1954. (Docket No. 67, Calendar
No. 46,187.) Decided September 8, 1954. Rehearing
denied October 14, 1954.

Bill by M. Will Somerville and others as property
owners in Midway Subdivision, against Landel
Metropolitan District, a public corporation, and
City of Lansing, a municipal corporation, for decla-
ration of rights and enforcement thereof in connec-
tion with water supply in annexed territory. Modern
Woodmen of America, an Illinois corporation, inter-
vene to protect their bondholder's interest. Decree
for plaintiffs. Defendant Landel Metropolitan Dis-
trict and intervenor appeal. Modified and affirmed.

*Sigler, Anderson & Carr,* for plaintiffs.

*Hughes & Campbell,* for defendant Landel Metro-
politan District.

*Charles P. Van Note* and *George R. Sidwell,* for
defendant City of Lansing.

*Berry, Stevens & Moorman,* for intervening de-
fendant Modern Woodmen of America.

BUSHNELL, J. Plaintiffs are resident property
owners in Midway Subdivision, which was formerly
located in the township of Lansing, but now is a part
of the city of Lansing as a result of an annexation,

effective November 14, 1950. Several subdivisions referred to in the record as Midway Subdivision were platted at various times, and in each instance the highways and streets were dedicated to the use of the public. Following the recording of the several plats, the earliest date of which was June 20, 1936, the interested parties entered into contracts with the city of Lansing through its board of water and electric light commissioners for the installation of water mains and the furnishing of a supply of water for domestic purposes. This service was provided under the authority of the charter of the city of Lansing and the Constitution (1908), art 8, § 23. See, also, CL 1948, § 117.4f (Stat Ann 1949 Rev § 5.2079) and CL 1948, § 123.141 *et seq.* (Stat Ann 1949 Rev § 5.2581 *et seq.*).

The several contracts contained the agreement that the rates for water would be 25% higher than those applicable within the city limits, and it was agreed "that the mains and services shall become the property of the board when the territory served by the extension made hereunder becomes part of the city of Lansing."

Defendant Landel Metropolitan District was incorporated November 12, 1946, under the provisions of the Constitution (1908), art 8, § 31, and PA 1929, No 312 (CL 1948, § 119.1 *et seq.* [Stat Ann 1949 Rev § 5.2131 *et seq.*]). Included in the boundaries of Landel are all of Lansing township and a part of Delhi township, both in Ingham county.

On August 1, 1947, Landel issued $2,800,000 of revenue bonds for the construction of a water supply and sewage-disposal system, $250,000 of which are held by intervening defendant Modern Woodmen of America, an Illinois corporation.

At a regular election held in the township of Lansing on April 7, 1947, the electors by a vote of 730 to 156 approved the following proposition:

"Shall the township board of the township of Lansing, Ingham county, Michigan be authorized to surrender to the Landel Metropolitan District in said county, the rights, obligations and property of said township respecting or connected with the functions of and utilities for supplying water and sewage disposal in said township, including the right to use the public highways for laying and maintaining water mains, sewers and appurtenances?"

The township board thereafter, by resolution, adopted August 19, 1947, transferred and surrendered to Landel all the rights of the township respecting or connected with the functions of and utilities for supplying water in said township, except an area not involved in this litigation, and including the right to use the public highways for laying and maintaining water mains and appurtenances.

On July 19, 1949, Landel entered into a 30-year lease with the city of Lansing under which the interests of the city in and to the water mains and appurtenances and the obligation to furnish water service were leased to Landel. This lease contains a termination clause which reads:

"Further, that should the territory served by said mains become a part of the city of Lansing, this lease may be terminated by the said city by its board of water and electric light commissioners by giving 6 months notice in writing to said district. If a part of the territory served shall become a part of the city of Lansing, then this lease may be terminated as above set forth as same relates to the mains within the area becoming a part of said city."

After the annexation by the city of Lansing of that part of the territory of Landel, in which the lands here in question are located, the board of water and electric light commissioners notified Landel of its intent to terminate the 1949 lease in accordance with the terms thereof. As a result of this notice, other

litigation now pending in the circuit court of Ingham county was instituted. A restraining order issued in that suit has kept that matter in *status quo*.

The instant suit was begun by the property owners on August 9, 1952, under the provisions of the third-party beneficiary act (PA 1937, No 296 [CL 1948, § 691.541 *et seq.* (Stat Ann 1953 Rev § 26.1231 *et seq.*)]).

In the action now before us plaintiffs sought a declaratory decree, contending that, as beneficiaries under the contracts described and as a result of the annexation of their property to the city, they now have the right to be supplied with water by the city of Lansing rather than Landel. At the conclusion of the hearing the circuit court, on April 13, 1953, entered a decree, declaring:

"(1) That the contracts aforesaid between plaintiffs' predecessors in title and occupancy of Midway subdivision and the city of Lansing were at the time of their execution and are now valid, subsisting obligations.

"(2) That the plaintiffs herein, as third-party beneficiaries under said contracts, are entitled to the protection and enforcement of their rights as therein expressed and defined.

"(3) That said defendant Landel Metropolitan District and said intervening defendant Modern Woodmen of America are not entitled to question the validity of said contracts aforesaid between the city of Lansing and the predecessors in title and interest of these plaintiffs on the ground that neither the city of Lansing nor said parties contracting with it obtained a franchise from the township of Lansing or permission to lay water pipes or mains in the streets and highways as set forth in the 4 plats covering said Midway subdivision.

"(4) That said plaintiffs and others whom they represent in this suit are entitled to the rendition of

water service to them at rates not exceeding those specified in said contracts.

"(5) That said Midway subdivision being now a part of the city of Lansing pursuant to the annexation proceedings, the plaintiffs herein and others whom they represent in this suit are entitled to the furnishing of water service to them by the city of Lansing.

"(6) That nothing herein contained shall preclude said plaintiffs or others they represent from instituting and maintaining an action for an accounting from and by the defendant Landel Metropolitan District based on their claim that the rates for water services charged and collected from them is in excess of the rates authorized by the provisions of said contracts."

Appellant Landel contended below, and contends here, that the contracts executed during the 10-year period from June, 1936, to June, 1946, between the city of Lansing and the residents of Midway subdivision, or their predecessors in title, for the furnishing of water are invalid obligations and unenforceable by plaintiffs because of failure to comply with certain constitutional and statutory provisions. Landel's basic premise is that, under the provisions of the Constitution (1908), art 8, § 28, no use can be made of the highways, streets, et cetera, of a township for pipes and conduits without the duly constituted authorities of the township consenting thereto and that water cannot be furnished to the residents of the township by one who has not first obtained a franchise therefor. Plaintiffs answer that such permission and franchise were not required because the city, under the Constitution (1908), art 8, § 23, enjoyed the right to own and operate either in or without its corporate limits public utilities for the supplying, selling and delivering of water.

This right, however, is a limited one and is made so by the language of the Constitution. In *Bay City*

*Plumbing & Heating Co.* v. *Lind,* 235 Mich 455, this Court pointed out that, while Bay City had the right, such as that claimed by Lansing in the instant case, nevertheless it was incumbent upon the city to observe other provisions of the Constitution, among which was article 8, § 28, which requires the obtaining of a franchise.

Plaintiffs contend that section 4 of PA 1917, No 34 (CL 1948, § 123.141 *et seq.* [Stat Ann 1949 Rev § 5.2581 *et seq.*]), indicates that municipalities furnishing water need not obtain the consent of the highway authorities for laying water mains, and, therefore, advances the view that, had the legislature intended such contracts to be invalid, it would not have referred to them as unenforceable; nor would it have indicated that the obligation to obtain permission from highway authorities did not rest upon the municipality. See CL 1948, § 123.144 (Stat Ann 1949 Rev § 5.2584), which reads:

"No contract relating to water service in such outside territory except in cases provided for in section 1 hereof, shall be enforceable against such corporation until the consent of the proper local authorities to the construction and maintenance of water mains in the highways of such territory has been obtained, and the burden of securing such consent shall not be upon such corporation."

We pass without comment the argument presented as to who was the proper authority from whom consent should have been obtained, also the questions propounded and resolved in *City of Menominee* v. *County of Menominee,* 283 Mich 146, for the reason that the trial court in its amended opinion found that no permission was ever obtained for the laying of water mains in Midway subdivision.

Although in this appeal we review *de novo,* nevertheless we find nothing in the record to refute the

lower court's finding in this respect. The crucial question in the case is the effect of noncompliance in the first instance with constitutional and statutory provisions.

We are in accord with the trial judge's view that this noncompliance did not result in an illegal and void transaction. In the absence of an express or implied constitutional or statutory mandate, we find nothing in the agreement that points to the performance of acts in violation of law. The situation rather falls into the classification of those legal agreements which have been performed in an illegal manner, *i.e.*, without first obtaining the requisite statutory consent.

Plaintiffs as third-party beneficiaries seek performance and defendant city stands ready and willing to perform. No bar to performance is present other than the claimed right of Landel to furnish water to plaintiffs on the basis that it was under contract to perform such services for them in a territory which was at one time within Landel's geographical limits.

Landel cites in support of its contention *Royal Oak Township* v. *City of Ferndale,* 309 Mich 458, and argues therefrom that Lansing township stood in the capacity of a trustee holding title to property and assets in trust for the property owners to be served. In that case the township sued the city in order to restrain it from interfering with the furnishing of water by the township in a territory subsequently annexed to the city. That controversy was solely between the township and the city and was determined on that basis, the Court saying at page 464:

"For reasons hereinafter noted, we are of the opinion that the instant case can be and should be adjudicated on the basis of the rights of plaintiff township and defendant city resulting from the an-

nexation of township territory, and without present consideration or determination of rights of other parties which under other circumstances would necessitate their consideration and which might be controlling of decision."

The cost of installation in the *Royal Oak Case,* as in the instant case, had either been met by the property owners or the subdividers. However, the opinion in the *Royal Oak Case* does not disclose whether there were any agreements reserving to the board any interest in and to the facilities, as is the situation here. There, the Court dismissed the issue raised by *amicus curiae* as to the impairment of the rights of bondholders. Nor was decision in that case based on the fact that a contract between the township and the city of Detroit was in existence for the furnishing of water by the city of Detroit to the township; and, notwithstanding the provision in that contract that, in the event of annexation to Detroit, water mains in the annexed territory would become the property of the city of Detroit.

We do not add to the length of this opinion by quoting language from the *Royal Oak Case,* which throws light on the problem presented by the instant case. See, therefore, *Royal Oak Township* v. *City of Ferndale,* 309 Mich 458, 466–470.

In the light of the reasoning of the *Royal Oak Case,* we are constrained to hold that plaintiffs here, as beneficiaries under the contract, have also a beneficial interest in the water mains in question and are entitled to the relief accorded them in the circuit court. Furthermore, as previously indicated, Landel in 1949 entered into a lease agreement with the city of Lansing in which it agreed to pay a rental for the use of water mains and further obligated itself to carry out the duties formerly performed by the city. No one has questioned the past performance of this lease agreement. However, now that the

city has invoked the forfeiture provisions of the lease, Landel, though admitting the legality of the agreement by payment of the rental, asserts that the lease is void because title to the mains in question was in the township. Landel had obtained rights and privileges under that lease. Is it now in any equitable position to attack its validity and is there not ample reason for asserting equitable estoppel against Landel?

The rights of the plaintiffs antedated those of Landel bondholders, who are intervening defendants herein. In point of time plaintiffs' rights are superior and should not be subject to impairment by what has occurred since the inception of their contracts with the city. Those contracts were deemed valid by the parties thereto and were in effect at the time the bonds were issued and sold. Landel at that time was not furnishing water to plaintiffs and did not render any service to them until about a month after the lease agreement between Landel and the city. The right to revenue inured to Landel after the execution of the lease agreement, and the bondholders were not, prior thereto, entitled to any revenue from the operation. Their rights came into existence only by reason of the lease agreement and cannot be said to attach to revenue that Landel at the time was not entitled to pledge.

The lien of the bondholders under the revenue bond act (PA 1933, No 94, § 7, as amended by PA 1949, No 244 [CLS 1952, § 141.107, Stat Ann 1953 Cum Supp § 5.2737]) cannot be extended to revenue which Landel was not then legally entitled to receive. The bondholders have no lien on the property of plaintiffs because their rights are secured only by revenue from a water-supply district of which plaintiffs' properties are no longer a part. Since at the time the bondholders' rights came into existence they were not entitled to revenue from the Midway Sub-

division, subsequent annexation has not impaired any of their rights nor lessened their security. It, therefore, must be held that there is no infringement of the constitutional rights of the bondholders.

Plaintiffs argue that the bondholders are not proper parties to this suit and rely upon decision in *Grand Rapids Independent Publishing Co. v. City of Grand Rapids,* 335 Mich 620.* In considering this decision, the circuit judge in his opinion, after quoting therefrom, held that, although the intervening defendant "should perhaps not have been admitted in the suit, however, inasmuch as it has been, the court will not now disturb its status."

We do not agree with the circuit judge's application of the decision in the *Grand Rapids Case,* as we do not have here a suit on behalf of bondholders to "enforce provisions of a lien created by statute and ordinance." On the contrary, we have a suit for a declaration of rights in which the intervening defendant has a substantial interest in the outcome of the litigation and it is, therefore, a proper party with the right to be heard.

In all other respects the decree of the circuit court is affirmed. A public question being involved, no costs will be allowed.

Butzel, C. J., and Sharpe, Boyles, Reid, Dethmers, and Kelly, JJ., concurred.

Carr, J., did not sit.

---

* See CL 1948, § 141.109 (Stat Ann 1949 Rev § 5.2739).—Reporter.