In the Matter of the ASSESSMENT OF CERTAIN PROPERTY REDUCED TO the "B" RATE BY the BOARD OF TAX ROLL CORRECTIONS.

No. 45611.

Supreme Court of Oklahoma.

Feb. 12, 1974.

Waldo F. Bales, City Atty. by David Nelson, Asst. City Atty., Tulsa, for appellant, City of Tulsa, Oklahoma.

Harry L. Seay, III, and Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Tulsa, for appellee, B. E. Barnes.

A. Wayne Breeland and Rogers, Bell & Robinson, Tulsa, for appellees, W. L. Dunn and James R. Robinson.

R. Thomas Seymour and Doerner, Stuart, Saunders, Daniel & Langenkamp, Tulsa, for appellees, C. E. Thornton, Plaza Development Co., P M & J Corp., and J. L. Graham.

Carl H. Young, III, Tulsa, for appellees, W. H. Helmerich III, John H. Williams, C. W. Flint, Jr., Coca-Cola Bottling Co. of Tulsa, Inc., Helmerich & Payne, Inc., and Rikwell Co. [formerly known as Chromium Plating Co.].

BARNES, Justice:

The question submitted for determination in this appeal is: What "municipal services" are included in the meaning of "as ordinarily furnished to city or town residents" as that phrase appears in the following proviso of the municipal annexation statutes, Title 11 O.S.1971, §§ 481 and 482:

"* * * [provided] that tracts of land in excess of five acres utilized by persons engaged in farming or ranching . . . [etc.] . . ., shall not be subject to city taxes, unless the city or town affected furnishes *municipal services as ordinarily furnished to city or town residents; * * *"* [Emphasis added.]

The question arose after the appellant City, hereinafter referred to as "City" or "Tulsa", annexed, to the territory then within its city limits, certain parcels of real estate [with their appurtenances] belonging to parties herein referred to as "Appellees" or "Owners". It is tacitly conceded, for the purpose of this appeal, that the above quoted proviso is applicable to all of the properties involved herein.

Prior to their annexation, the subject properties had been taxed at the rate referred to as the "B" rate, which is said to include only school district assessments and the county's portion of ad valorem taxes. After the properties' annexation, the County Assessor of Tulsa County assessed them for the year 1971 at the higher "A" rate, which includes the City's portion of the county ad valorem tax rate.

After said assessment, the Owners filed protests before Tulsa County's Board of Tax Roll Corrections. At the Board's subsequent hearing, the protests were opposed by the City, but the Board sustained them and reduced the properties' tax rate from the "A" rate to the "B" rate above referred to.

The City then appealed to the District Court. After a trial, wherein no showing was made as to what municipal services Tulsa residents, or others, were then receiving, the Court found that it could determine the proper interpretation of the above quoted statutory proviso under the Declaratory Judgment Act, and decreed the following:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by this Court that the phrase 'municipal services as ordinarily furnished to city residents' as said phrase is contained in Okla.Stat. Tit. 11, § 481, § 482 (1971) be and it hereby is interpreted to require fire protection, police protection, water service, street maintenance and refuse service, and each of them which is essentially equivalent to that *received by a majority of the citizens of the City of Tulsa.*

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that each cause heard before the Board of Tax Roll Corrections on October 12, 1971, and included within this action be remanded to such Board of Tax Roll Corrections for further hearing under the guidelines, findings and determinations set out above. * * *" [Emphasis added.]

The City has lodged the present appeal from the above quoted order. It does not deny that Tulsa residents ordinarily receive the five municipal services named in the quoted court order, but it contends that municipalities ordinarily furnish only three of such services, namely: Fire protection, police protection, and street maintenance. Therefore, City argues, the above quoted statute does not contemplate that property annexed to a city be not subjected to city taxes unless the city also furnishes the owners of such property water service and refuse service.

In other arguments, the City emphasizes the word "furnished" in the above quoted statutory proviso, and, by a somewhat intricate discussion on municipal fiscal matters and of its own city budget, seeks to show that only "governmental" services are ordinarily furnished city inhabitants. It argues that other services, which are categorized as "proprietary", such as city water and garbage collection and disposal, are not "furnished", but are principally self-sustaining and are obtained by city residents on an optional basis, depending upon whether or not they pay the monthly charge therefor.

City also points out that before the Twenty-ninth Regular Session of the Oklahoma Legislature amended Title 11 O.S. 1961, § 481, to make it read as the present law now reads, it had before it for consideration that Session's House Bill No. 598 and Senate Bill No. 264, both of which were introduced to amend that section by providing a procedure for de-annexation of property previously incorporated within a municipality, upon a petition of certain owners of a portion thereof. These Bills provided for denial of such petitions if the court found that the municipality had "extended adequate municipal services to the area . . ."; and, in the Bills' third sections, they provided:

"'Adequate municipal services' shall include but not be restricted to, law enforcement, street construction and maintenance, and shall further mean fire protection and municipal services *beneficial to the property to be served* and equal in kind and quality to those furnished by the municipality to other areas within the corporate limits, comparable in land use and population density to the areas concerned." [Emphasis added.]

Whatever may be the significance of the Twenty-ninth Legislature's failure to pass the above described Bills, it would appear that if that Session, or any later one, had intended to allow tracts "in excess of five acres utilized by persons engaged in farming or ranching" to be subjected to city taxes without those persons being furnished the municipal services ordinarily furnished other city residents, it would have been a rather simple matter to have shown this by inserting appropriate language into Sections 481 and 482, supra.

Owners call our attention to the fact that Tulsa's City Charter and Ordinances authorize said City to furnish its inhabitants numerous services that cannot be called "governmental" in the strict sense of the word, but, at the same time, are substantially related to public health and welfare.

Without detailing all of the various arguments of the parties, we think it is sufficient to say that we have carefully considered them, together with the authorities they cite, but we are of the opinion that none offers substantial assistance in deciding the question at issue. This question, conceded to be one of first impression, is not, in our opinion, what services some cities, or even most cities, customarily, or ordinarily, furnish their inhabitants. If it were, statements of other courts involving other cities, and what services it was their "duty" to furnish, might be found to have some relevancy. See, for instance, Royal Oak Tp. v. City of Ferndale, 309 Mich. 458, 15 N.W.2d 707, 710, and other cases citing that case and others, such as Stegall v. City of Jackson, 244 Miss. 169, 141 So.2d 236, 239, 240; Trentman v. City and County of Denver, Colo. [U.S.C.A., 10th Cir.], 236 F.2d 951, 954. Notice also City of Uvalde v. Uvalde Electric & Ice Co. [Tex.Com.App.], 250 S.W. 140.

In our opinion, the only decisive question here may be stated as follows: What was the intention of the Oklahoma Legislature in requiring a municipality to furnish annexed tracts of a certain description the municipal services "ordinarily furnished" residents of said municipality, in order to subject them to city taxes? If we properly interpret this statutory requirement, then the answer to the question of what municipal services are thereby contemplated lies in determining what municipal services are ordinarily furnished to residents of the City of Tulsa. As we have already stated, City does not deny that such services include fire protection, police protection, water service, street maintenance and refuse service. Therefore, for the purpose of this opinion, we will assume that this is true. This statement, however, is not to be interpreted, in and of itself, as an estoppel of the City to hereafter show the contrary, as that is not in issue here.

In accord with the foregoing, the order and/or judgment herein appealed from is hereby affirmed, as herein explained.

All Justices concur.