608 So.2d 1332 (1992)
CITY OF MOSS POINT, Mississippi
v.
Talmadge L. MILLER, Individually, and as Next Friend to Tammie Miller, a Minor, and Darlene Miller, a Minor.
No. 89-CA-641.
Supreme Court of Mississippi.
September 10, 1992.
Rehearing Denied December 3, 1992.
Raymond L. Brown, Brown & Watt, Patrick R. Buchanan, Brown & Wilkinson, Pascagoula, for appellant.
Wynn E. Clark, Owen Galloway & Clark, Gulfport, for appellee.
Before HAWKINS, P.J., and SULLIVAN and BANKS, JJ.
BANKS, Justice, for the Court:

I.
This case comes to the Court on appeal prosecuted by the city from an adverse jury verdict in favor of the plaintiffs, Talmadge, Darlene and Tammy Miller (Millers or plaintiffs), the survivors of the deceased, Anna Laura Miller (Anna) who died as a result of a boating accident. The claim is one for premises liability. The accident occurred on property leased to the county. In an ordinary case that would end the matter because principles of sovereign immunity in existence at the time of the accident barred recovery. However, this is no ordinary case because the county alleges that it gave the property to the city. The city argues to the contrary. Both the city and the county agree that the accident resulting in the death of Anna was tragic. For reasons to be stated presently, we reverse *1333 the judgment entered below and render judgment for the city.

II.
On September 30, 1983, Talmadge Miller, individually and on behalf of his minor daughters, filed a complaint against the city and the county. The complaint charged that the city "constructed a recreational boat launch and ramp" which was "controlled and maintained or subject to the control and maintenance" of both the city and the county. It was alleged further that both the city and the county were negligent in the construction and maintenance of the ramp, and this negligence caused or contributed to the death of Miller's wife, Anna. The Millers sought damages for pain and suffering, emotional distress, loss of society and companionship and the present net value of Anna's life.
In November of the same year, the county filed its "Answer" responding inter alia that the complaint failed to state a cause of action and affirmatively alleging that action against it was barred by the doctrine of sovereign immunity.
On December 12, 1983, the city filed its "Answer" to the charges brought by the Millers. It denied the material allegations of the complaint and claimed affirmatively that Anna's own negligence proximately caused her death.
The county moved for summary judgment on January 5, 1984, asserting as bars to recovery affirmative defenses of statute of limitations and sovereign immunity. The court dismissed the county from suit on May 23, 1989, on the ground that sovereign immunity operated to exempt it from liability.
The case was tried to a jury on May 22-23, 1989. After trial, the jury found in favor of the Millers and assessed damages against the city in the amount of $60,000. The Millers moved for pre-judgment interest on May 24, 1989. No rule was cited as authority for considering such a motion. Pre-judgment interest was not an issue that had been presented to the jury. Judgment in accordance with the jury verdict was entered May 25, 1989. The judgment made no mention of the prior motion for pre-judgment interest. On May 25, 1989, the city filed a "Motion for Judgment Notwithstanding the Verdict, or, in the Alternative, a New Trial". These motions were overruled on the same day that they were filed. This order also made no reference to the motion for pre-judgment interest. After denial of the post-trial motions, the city filed its "Notice of Appeal" on May 30, 1989.
On June 30, 1989, the court entered an order denying the motion for pre-judgment interest, terming it for the first time as a Rule 59 motion. The record is unclear as to whether the city received any actual notice of the entry of this order. No other filings were made below. On September 14, 1989, the Millers moved to dismiss the appeal. Subsequently, this Court entered an order passing the motion for consideration with the merits of the case.

III.
On May 3, 1976, Joan Nelson Head leased certain property to the county. The lease provided that, absent written consent of the lessor, the property could only be used for recreational purposes and could not be assigned or sub-let. On this leased land, the county constructed a boat ramp.
Prior to the testimony, Plaintiff's counsel published to the jury the county's responses to the Request for Admissions. The county admitted that (1) it constructed the recreational boat launching ramp which was the subject of the litigation; (2) it exercised control over the ramp; (3) it made no changes or alterations to the design or slope of the ramp; and (4) prior to September 4, 1978, the date of the accident, it "turned over the recreational boat launching ramp" to the city. The city's responses to the Request for Admission were also read into evidence. In its responses it admitted that (1) the county constructed the ramp; (2) it made no changes or alterations to the ramp; and (3) it did *1334 not at any time attempt to provide maintenance or any type of cleaning of the recreational boat launching ramp.
Talmadge Miller testified that around 2:00 p.m. on September 4, 1978, he and Anna attempted to launch their boat at the Moss Point boat ramp on Highway 63. This was the first time they used that particular ramp. The boat which was a fifteen-foot Taylor Mate was transported on a trailer. After arriving at the ramp, Talmadge backed the boat into the water, stopped the car and activated the emergency brake. He and his wife then exited the car and unloaded the boat. After unloading the boat, they put on their life jackets. While holding the boat with a rope, Talmadge told Anna to "go pull the car out and park the car." Anna returned to the car which was in park and the engine was off.
Anna started the engine and put the car in drive. Talmadge was still holding the boat and waiting for her to pull the trailer out of the water, when he heard the engine stop, saw the brake lights illuminated and the car begin to slide backwards. Talmadge observed that the wheels/tires were not rolling/moving. As the car slid, the trailer fell off the end of the ramp the force of which turned the car around in the opposite direction, making it appear that the car had been driven into the water. During this commotion, Anna was trying to start the car. After the car entered the water, Talmadge swam to it and tried to open the door but his hand caught in the door, hindering his efforts. Noticing this, Anna lay down in the front seat, put her feet against the door and pushed the door open enough to free Talmadge's hand seconds before the car sank. Talmadge described the look on his wife's face as one of panic and observed that she was "real scared."
Talmadge yelled for Anna to "let the windows down" but by that time the car had lost power and she could not open a window. Aid was given Talmadge by another person who arrived before the car sank. That person attempted to break the windshield with a boat paddle, but to no avail. Police and fire personnel arrived on the scene and Anna's body was pulled from the car by a diver. Anna was transported to the hospital where she expired the next morning, September 5, 1978.
Reports indicated that the car with Anna in it, was submerged in eight to twelve feet of water. Talmadge testified that there was no traction on the launching ramp. Although it appeared to him that the ramp was slippery, he stated that the condition did not indicate to him that the boat could not be launched from the ramp.
Other witnesses recollections differed slightly from Talmadge's account. Their testimony revealed that there was insufficient traction on the ramp and the absence of traction ridges coupled with the slick surface of the ramp were contributing causes of the accident.
Eddie Khayat was called as an adverse witness. He testified that he was formerly a supervisor in Jackson County. His district encompassed the city of Moss Point. He testified that he was active in the recreational affairs of the city.
According to Khayat, in a resolution dated August 25, 1977, the county gave the boat launch and ramp to the city. He did not know, however, if the resolution was acted upon by the city. In fact, he was not aware if the document was delivered ever to the city or even if the city was made aware of its contents; Kyahat asserted that he did not take it to the city.
In May of 1977, shortly before the adoption of the resolution, there was a ceremony dedicating the boat launching ramp. This affair was attended by the city beautification committee which was not a political arm of the city and whose members were primarily private citizens. Khayat testified that this was no formal dedication. He stated that the board of aldermen and possibly John Welch, city recreational director, knew what he and the county were doing or attempting to do in connection with the *1335 ramp. Though stating that Welch knew about the ramp, Khayat testified unequivocally that he had no official contact with Welch about the ramp. He could not recall if he had a conversation with the mayor about the county's resolution. He reiterated, however, that the city knew what he was doing in connection with the ramp. At this juncture the plaintiff's counsel read into the record and the court accepted into evidence, portions of the minutes of the city, dated August 24, 1977, providing that
"there came on for consideration the matter of a discussion with Jackson County Supervisor E.A. Khayat. Mr. Khayat gave a detailed explanation of the work done in the City of Moss Point by the County, naming the streets that had been re-surfaced with asphalt and the amount of money spent on various projects in the City."
One of the projects that had been going on in the city was the ramp. The minutes do not reflect that the ramp was mentioned.
Khayat testified that it was his idea to give the ramp to the city because the city had a more organized recreational department and police and fire protection was available from the city.
On cross-examination, Khayat dealt what should have been a devastating blow to the plaintiff's case. He testified that he did not recall talking to anyone in the city about conveying boat launching ramps to the city. Moreover, prior to and after the date of the county resolution, the county was responsible for maintenance of and did in fact maintain the boat ramp in question.
At the close of the plaintiff's case, the city moved for a directed verdict on the ground that the city did not act officially with respect to the ramp. The motion was denied and the defense proceeded with its case.
The defense called present and past city officials, who testified that the city never received a copy of the resolution adopted by the county purporting to give the ramp to the city. These witnesses stated, however, that they were not aware of what Khayat did on his own. They, in their official capacities, did nothing, indeed they were not asked to do anything, to inform the city of the county's action regarding the conveyance. One witness in particular, Donald Coleman, City Clerk of Moss Point, testified that he was clerk when Khayat was supposed to have come before the mayor and the city council and informed them of the county's resolution. Coleman testified that he checked the minutes of the council meeting and reported that the minutes do not indicate that Khayat or any other representative of the county came before the mayor or the council and talked about conveying the ramps to the city.
Lloyd Roberts, the mayor at the time of this purported conveyance testified that never in his eight years as head of the city, did Khayat or anyone else come before a meeting of the mayor and/or board of aldermen and state that the county was conveying the ramps or intended to convey the ramps to the city. Additionally, John Welch, the superintendent of parks and recreation for the city testified that he had held such position since 1966 and he had no conversation with Khayat or any one else concerning the county's giving ramps to the city.
The jury returned a verdict in favor of the plaintiffs and awarded $60,000 in damages. The court entered judgment to that effect on May 25, 1989. From that decision, the city prosecutes this appeal.

IV.
Before considering the merits of the city's appeal, we must resolve the issues presented by plaintiffs' motion to dismiss this appeal for lack of jurisdiction. Specifically, plaintiffs allege that the notice of appeal was fatally premature and ineffective to perfect the appeal. We hold that the motion is not well-taken and overrule it.
Miller argues that a plain reading of *1336 Supreme Court Rules 3(a)[1], 4(a)[2], and 4(d)[3] require dismissal of the appeal because the notice of appeal was filed before disposition of Miller's post-trial motion. The city argues to the contrary and its response is two-fold. First, it contends that the Millers' motion for prejudgment interest was not a Rule 59(e) motion. Therefore, the city had no obligation to file a new notice of appeal and this court has jurisdiction to hear the case. It contends that relief under Rule 59 has only been granted in cases where the granting of pre-judgment interest fell directly within the discretion of the Court. Here, it argues that the lower court was barred from granting pre-judgment interest because in Mississippi, there are only three distinct situations when such interest may be granted.[4] Since the trial judge was obligated to deny the motion for pre-judgment interest, Rule 59 is not applicable. Second, it claims that such motions involve collateral issues making Rule 59 inappropriate. During oral argument to the Court, counsel argued yet another reason for its position. Specifically, the sought relief from the harshness of Rule 4 on grounds of manifest injustice pursuant to Supreme Court Rule 2(c).[5]
We agree with the result advanced by the city, but not its reasoning. That the objective of the motion was a matter within the discretion of the trial court is not determinative of the nature of the motion. The motion filed is not a rule 59(e) motion for the simple reason that no judgment had been entered at the time that it was filed. "While Rule 59(e) provides that motions to alter or amend a judgment must be served not later than ten days after entry of judgment, that limitation is not applicable here since no judgment has been entered." Friedman v. Typhoon Air Conditioning Co., 31 F.R.D. 287 (1962). Rule 58 provides that a judgment is not effective until delivered to the clerk for filing. See Miss. R.Civ.P. 58. Furthermore, the comments to Rule 58 provide that "a motion to alter or amend a judgment must be served within ten days of entry of judgment... ." *1337 Here, there was no judgment entered when the Millers moved for pre-judgment interest; thus their motion was of no effect.
Where, as in the present case, the motion for pre-judgment interest precedes the judgment, courts have treated such motions as ones for reconsideration of the court's determination and for leave to serve a supplemental complaint see Friedman, 31 F.R.D. at 289 or as a motion for a new trial, Jones v. Fox, 162 F. Supp. 449 (1958). The instant motion, however, cannot be deemed as one for new trial or any other Rule 59 relief. No grounds for new trial were suggested. Plaintiffs rely solely on Rule 59(e) in seeking to have this appeal dismissed. That reliance is misplaced. The motion to dismiss is without merit and is denied.

V.
We address the primary issue raised by the city which is whether or not the it was entitled to judgment as a matter of law. We hold that it was. Thus, we reverse the judgment entered below and render decision for the city.
The city contends that in order for it to be charged with responsibility for the accident, it was incumbent upon the Millers to prove that the ramp was given by the county to the city as a gift. It argues that the Millers did not meet their burden of proving every single element of a valid inter vivos gift.
The Millers respond that the city may not pursue this contention on appeal because it was not presented to the trial court. Further, the cases cited by the city concern gifts of personal property and are inapposite to this case.
The Millers' contentions fall wide of the mark. They appear to require that the city use the word gift. While not specifically mentioned, the city in effect argued that theory below. In fact, the judge, during the argument on the city's motion to dismiss, understood the substance of the city's defense when he asked, "[you] are saying the City didn't know anything about this gift?" Because the city couched its argument in terms of taking no official action with respect to the ramp, did not argue whether or not the other elements of gift had been met, and neglects to use the word gift, does not make the transaction any less a gift. Moreover, in argument and through the testimony of its witnesses and Khayat, the city contended that the county did not deliver and the city did not accept the ramp. The city only had to establish that the Millers did not prove any one of the elements to void the conveyance as an inter vivos gift.
One of the elements that must be proven is delivery by the donor and acceptance by the donee. In Re Will and Estate of Strange, 548 So.2d 1323, 1325 (Miss. 1989). There was no evidence whatever that established that the city accepted the property in question. The great weight of the testimony revealed that the city was not aware of the resolution. There was no indication of any official action with regard to the ramp. In fact, Khayat, the person who allegedly was the go-between, testified that the county at all times maintained and was responsible for the ramp.
The minutes are the only evidence of the official actions of the municipality. See Miss. Code Ann. 21-15-17 (Rev. 1991); Modling v. Bailey Homes and Ins., 490 So.2d 887, 891 (Miss. 1986). The city could not have legally accepted the attempted gift of the ramp from the county without a notation on its minutes. Here, the minutes do not indicate a transfer or acceptance of the ramp. Thus, the city was not in control of the ramp and therefore not legally responsible for the accident.
What is more, the witnesses for the city, including the mayor and city clerk at the time of the alleged conveyance, and the park superintendent all testified that the resolution never was discussed and the conveyance never took place. They stated that the city never maintained or exercised any control over the property. Thus, there was neither constructive nor symbolic delivery or acceptance of the property. The only thing demonstrated from the testimony was that the county passed a resolution evidencing an intent to give the ramp to the *1338 city. On these facts, the city should not have been liable to the Millers for an accident occurring on property which it did not own and it was error for the court to deny the municipality's motions for summary judgment, directed verdict and jnov.
For the foregoing reasons the judgment of the circuit court is reversed and judgment is rendered in favor of the City of Moss Point.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER and SULLIVAN, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
PITTMAN and McRAE, JJ., not participating.
NOTES
[1] Mississippi Supreme Court Rule 3(a) provides,

"In all cases, both civil and criminal, in which an appeal is permitted by law as of right to this Court, there shall be one procedure for perfecting such appeal. That procedure is prescribed in these rules .. . An appeal permitted by law as of right from a trial court to this Court shall be taken by filing a notice of appeal with the clerk of the trial court within the time allowed by Rule 4. Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the perfection of the appeal, but is ground only for such action as this Court deems appropriate, which may include dismissal of the appeal... ."
Id.
[2] Rule 4(a) of the Supreme Court Rules provides,

In a civil or criminal case in which an appeal or cross-appeal is permitted by law as of right from a trial court to this Court the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from... .
Id. (emphasis added)
[3] Mississippi Supreme Court Rule 4(d) reads in parts relevant to the discussion,

If a timely motion under the Mississippi Rules of Civil Procedure is filed in the trial court by any party: ... (iv) under Rule 59 to alter or amend the judgment ... the time for appeal for all parties shall run from the entry of the order ... granting or denying any other such motion. A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above.
Id. (emphasis added)
[4] Prejudgment interest may be granted (1) pursuant to a statute, (2) if a provision in a contract provides or (3) where the proof is sufficient to support an award of punitive damages. See Stanton & Associates v. Bryant Construction Company, 464 So.2d 499, 502 (Miss. 1985).
[5] The comment to rule 2(c) indicates that the rule will be suspended for reasons of expedition or good cause shown. Where a party has filed an otherwise timely notice of appeal which is ineffective under rules 4(d) or (e), the Court may suspend the operation of these rules to prevent manifest injustice. We declined to follow federal practice in this area because it "creates an injustice which [our] rules [were] not intended to perpetuate." Miss.Sup.Ct.R. 2(c), comment. We explicitly do not decide whether or not this case is one in which a manifest injustice would result if the Millers' motion to dismiss the city's appeal was granted. We decline because here we have no rule 59 motion. Thus, Supreme Court rule 4 is not called into play.